**CONTINENTAL CAN COMPANY, U. S. A., a member of the Continental Group, Inc., Plaintiff,**

v.

**Ray MARSHALL, Secretary of Labor, United States Department of Labor, and United States Occupational Safety and Health Review Commission, Defendants.**

No. 78–1033.

United States District Court, S. D. Illinois, N. D.

Aug. 8, 1978.

Tim Wright, Charles Chadd, Chicago, Ill., Eugene L. White, Peoria, Ill., for plaintiff.

Allen Feldman and Lorelei Borland, Washington, D.C., Edward A. Bobrick, Chicago, Ill., for defendants.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

This action seeks to enjoin the defendants from enforcing a decision of December 12, 1977 by defendant Review Commission, or from proceeding further with charges presently pending which involve nine of its metal can-manufacturing plants in various locations, including Peoria Heights, Illinois, in this district. Plaintiff invokes the court's jurisdiction under 28 U.S.C. §§ 1331, 1361, 2201 and 2202, and lays venue here under 28 U.S.C. § 1391(a) "because the Plaintiff resides in the District and the cause of action arose there." There is no challenge to venue and the case is submitted to the court on a stipulated evidentiary record, plaintiff's motion for injunction, and defendants' motion to dismiss or for summary judgment. The question presented is clearly one of law, and the relief prayed by plaintiff must essentially be granted.

Stipulated facts include the following:

The Continental Group is a New York corporation with its general corporate headquarters in New York, New York. Continental Can is a member of the Continental Group and operates eighty (80) metal can-manufacturing plants which are scattered throughout the United States. Although not all types of the machines are present in each plant, all plants in the division have similar machinery and produce sound levels in excess of Table G–16 of 29 C.F.R. § 1910.95. The eighty plants involve approximately 6,600 separate machines. About 6,300 of these are of 50 types and have been classified for noise control purposes by Continental Can into 19 families of basically similar machines. The principal sound sources are generated by the machines in the 19 families.

Since July 1973, nineteen of Continental Can's said eighty plants have been cited by the United States Occupational Safety and Health Administration (OSHA) for violations of 29 C.F.R. § 1910.95(b)(1). Each citation alleges that in the plant in question feasible engineering and administrative controls were not utilized to reduce sound levels where they exceeded those provided in Table G–16. The following list identifies the plants which had been cited as of the date of the stipulation here, the date each citation issued, and the then current status of each case:

| | Plant Cited | Date | Disposition |
|---|---|---|---|
| 1. | Los Angeles, California | 7/25/73 | Dismissed by Review Commission. |
| 2. | Pittsburg, California | 8/8/73 | "    "    "    " |
| 3. | San Jose, California | 8/20/73 | "    "    "    " |
| 4. | Pascagoula, Mississippi | 9/10/73 | "    "    "    " |
| 5. | Worthington, Ohio | 10/11/73 | "    "    "    " |

| Plant Cited | Date | Disposition |
|---|---|---|
| 6. Bedford Heights, Ohio | 2/25/74 | "     "     "     " |
| 7. Omaha, Nebraska | 4/18/74 | Pending. |
| 8. Cincinnati, Ohio | 4/19/74 | Dismissed by Review Commission. |
| 9. Columbus, Ohio | 4/30/74 | "     "     "     " |
| 10. Tampa, Florida | 10/1/74 | Pending. |
| 11. St. Joseph, Missouri | 12/16/74 | " |
| 12. Peoria, Illinois (1420 W. Altorfer Dr.) | 7/18/75 | Dismissed on Secretary's motion September 25, 1975. |
| 13. Albany, New York | 12/13/75 | Pending. |
| 14. Glendale, Wisconsin | 2/6/76 | Dismissed by stipulation of the parties. |
| 15. Miami, Florida | 6/30/77 | Pending. |
| 16. Paterson, New Jersey | 11/18/77 | Pending. |
| 17. Vineland, New Jersey | 12/30/77 | Pending. |
| 18. Peoria Heights, Ill. (1115 East Marietta St.) | 2/17/78 | Pending. |
| 19. Itasca, Illinois | 5/11/78 | Pending. |

Fourteen of the citations were specifically designated as "Nonserious" and only one as "Serious."

The defendant United States Occupational Safety and Health Review Commission (Commission or Review Commission) granted Continental Can's motion to consolidate the first three cases before a single administrative law judge. Within a few months, five additional Continental Can plants also received substantially similar citations. Pursuant to stipulations, the five additional cases were consolidated for decision before the administrative law judge who had been assigned the original cases. A six-day evidentiary hearing was held before that judge, namely, Judge Robert N. Burchmore. Continental Can took the position that the Secretary of Labor's interpretation of the Noise Standard was arbitrary and therefore invalid, because it sought implementation of engineering controls regardless of the availability of much less costly and at least as effective means of protecting employee hearing. It argued that the sole interpretation which would save the validity of the Standard would not require engineering controls unless they were economically feasible in relation to available alternatives for such protection. The Secretary took the position that economic feasibility was not relevant, and responded only by putting into evidence the Standard & Poor's report for December 7, 1973 on Continental Can, to show simply its financial capacity to make the large expenditures the Secretary demanded.

On October 1, 1974, Judge Burchmore rendered a decision holding the standard invalid as interpreted by the Secretary and dismissed the eight citations. The Secretary petitioned the full Commission for review; and while that review was pending, additional citations were issued against other Continental Can plants. The Secretary opposed Continental Can's efforts to stay those new proceedings; but the Review Commission did issue an order staying the new cases pending its decision in the cases on review.

The Review Commission issued a decision on August 24, 1976 affirming the vacation of the citations against Continental Can in the initial eight plants. The Secretary of Labor appealed that decision to the United States Court of Appeals for the Ninth Circuit, but later moved the court to drop that appeal, and that motion was granted on April 26, 1977.

After the final Commission decision in Continental Can's favor in the initial eight consolidated cases, the Company moved for summary judgment in the cases still pending on the ground of collateral estoppel. Meanwhile, the Secretary continued to make inspections and cite other Continental Can plants for alleged violations of the Noise Standard. As these cases were assigned to administrative law judges, Continental Can moved to dismiss them on the same ground of collateral estoppel, seeking review of adverse decisions.

On December 12, 1977, the Review Commission held that the requirements for the application of collateral estoppel had not been met, denied Continental Can's motions for summary judgment in the four cases then under consideration, and remanded each of those cases for hearings.

Before this court as stipulated exhibits are copies of virtually all the citations, administrative decisions and orders, the parties' motions and briefs in those proceedings, etc., including the Secretary's trial exhibit # 41 (Exhibit 4) giving financial data on Continental Can as published by

Standard & Poor's Corp. on December 7, 1973.

The OSHA regulation here involved provides:

"When employees are subjected to sound exceeding those listed in Table G–16 [90 dBA for an eight-hour day], feasible administrative or engineering controls shall be utilized. If such controls fail to reduce sound levels within the levels of Table G–16, personal protective equipment shall be provided and used to reduce sound levels within the levels of the table." 29 C.F.R. § 1910.95(b)(1).

It is stipulated that the noise levels in plaintiff's can-making plants generally exceed the Table G–16 permissible limits. Judge Burchmore's Decision and Order [1] found levels from 94 to 102 dBA. He also found that the company was providing ear protective equipment for employees to wear (ear plugs and ear muffs) which, when properly used, attenuated the noise level to a range of 60 to 80 dBA, while the engineering controls advocated by the Secretary would achieve only the maximum permissible limit of 90 dBA in most but not in all instances.

Judge Burchmore observed, at pages 22 and 23 of that Decision and Order:

"As herein above stated, the evidence shows that ear plugs will attenuate the noise level by 22 to 27 dbA and ear muffs up to 35 dbA. Respondent's employees are therefore protected against noise levels even lower than the G–16 level of 90 dbA. If engineering controls are required, and if they actually reduce the noise levels to G–16 levels, then the employees will not be required to wear ear protection and their hearing will be protected against any noise level over 90 dbA. The protection thus afforded would be less than at present, and all that would be gained is freedom from wearing ear protection. Yet the cost of so doing is shown to amount to $33,500,000 for design, fabrication and installation, plus

---

1. Dated October 31, 1974, in the first eight consolidated cases, being *Secretary v. Conti-* *nental Can*, OSHRC, Nos. 3973, 4397, 4501, 4853, 5327, 7122, 7910, and 7920.

about $175,000 per year for maintenance, as compared with about $100,000 per year total cost of a company-wide mandatory program of personal ear protection. Moreover, the evidence shows that this costly engineering program is not certain to produce G–16 levels in the plants; indeed the proof establishes that G–16 levels will not result in some plants, even though they may be attained in some locations. Where G–16 levels do not result, ear protection must still be worn and nothing has been gained except a partial and inadequate lowering of the noise levels. To require as the Secretary does that such inconsequential controls be undertaken without regard to cost is arbitrary to the point of capriciousness."

The accuracy of these succinct observations is nowhere disputed, although the Secretary does not concede capriciousness; and the Secretary points out that he simply did not contest the economic factors in those cases, believing them immaterial under the regulation. As previously noted, the Review Commission affirmed dismissal of these eight consolidated cases. It found the regulation valid as properly interpreted, but decided that economic feasibility was included and that plaintiff had shown engineering controls to be economically infeasible.

The subsequent decision of the Review Commission, dated December 12, 1977, which refused to apply the doctrine of collateral estoppel, and thus precipitated this suit, did so because, as the opinion said:

" * * *, we conclude that the requirements for the application of collateral estoppel have not been met * * *."

It also decided that the Secretary should have an opportunity to propose "other types of controls," as enclosures was the only type thus far proposed.

The Review Commission relied chiefly on the discussion of collateral estoppel in *Commissioner v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), concluding that such a bar was inapplicable because the Secretary of Labor had not actively litigated the question of economic feasibility in the eight consolidated and previously dismissed cases (there and hereinafter designated "Continental Can 1"), and thus was still entitled to do so, even though that issue had been raised by plaintiff and its resolution was the critical factor in determination of the cases in plaintiff's favor.

Defendants contend here that the court has no subject matter jurisdiction because exclusive jurisdiction resides in the Review Commission, subject to review by the United States Courts of Appeals, and that injunctive relief is inappropriate.

Plaintiff contends that the Review Commission's failure to apply collateral estoppel was wrong as a matter of law, and that the Secretary's present approach to the problem of noise in its plants deprives it of due process of law as guaranteed by the Fifth Amendment to the Constitution of the United States. It is contended, finally, that therefore this situation presents an exception to the general requirement of exhaustion of administrative remedies, which exception has been clearly recognized by the Supreme Court of the United States.

A number of rather fundamental facts and propositions must be recognized in relation to the future of the noise problem in plaintiff's plants. First, the problem is national in scope, with no existing specification of any important differences among any of the eighty plants throughout the country.[2] Second, on the basis of known conditions, the plant-by-plant approach to the noise problem is not a reasoned or reasonable effort to enforce a safe standard for the protection of anybody. Third, as determined by Administrative Law Judge

---

**2.** The defendant Commission, in its December 12, 1977 Decision, noted that the Secretary had submitted an affidavit of an "acoustical consultant," which stated that there are "significant differences" between plants which "affect the general approach of noise reduction and the feasibility of controls"; but it is stipulated here that all eighty plants "have similar machinery and noise levels in excess of Table G–16 of 29 C.F.R. § 1910.95, * * *." The affidavit mentioned is not before this court.

Burchmore and the defendant Review Commission, a plan is not "feasible" which costs $33,500,000 to institute and $175,000 per year to maintain nationwide, when it does not do as effective a job of employee protection against noise as an existing program which costs $100,000 per year. Fourth, treating the issue of "feasibility of engineering or administrative controls" over and over in an untold number of hearings involving single plant (or small, consolidated group) citations is harassment of a capricious kind. The defendants really should find a better way to get their whole act together on noise at Continental Can, so long as that employer has in place a more effective employee protection program than OSHA has suggested.

The parties cite different legal authorities which are really not in conflict, because the parties do not agree on what the issue before this court really is. Defendants, in effect, say simply: "We'll continue to do it our way because the plants are not quite all the same, which precludes summary judgment based on collateral estoppel, and this court has no jurisdiction to stop our program." They do not recognize the constitutional issue raised and argued by plaintiff. Plaintiff's position, argued and well supported in a twenty-one-page brief, receives scant mention in defendants' twenty-three-page brief, and plaintiff's cited authorities are treated primarily in a footnote simply by declaring those mentioned inapposite. Defendants' brief does not even mention *Turner Company v. Secretary of Labor,* 561 F.2d 82 (7th Cir. 1977), which states the law in this district, and which clearly upholds the requirement of economic feasibility, on a comparison basis with personal protective alternatives, in the enforcement of 29 C.F.R. § 1910.95(b)(1).[3]

Plaintiff also dismisses defendants' arguments without much discussion, contending that they involve primarily only general rules which, on established precedent, are to be overridden in a fact situation involving harassment through "duplicative prosecutions."[4]

■ While defendants do have important and continuing inspection and other responsibilities under the law which they may not abandon in plaintiff's plants, it seems crystal clear that, with the background developed here, they must find means of performance in some way other than simply prosecuting individual noise citations in the nine cases apparently now pending and against the more than sixty remaining plants where no citations have yet issued. A national approach must be found, and this court does have jurisdiction to protect plaintiff from the current type of repetitious action by defendants, who do represent the government of the United States in the premises.[5]

■ *Smith v. Illinois Bell Telephone Co.,* 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747 (1926), stands clearly for the proposition that federal court jurisdiction exists to protect against governmental abuse. While the rule requiring exhaustion of administrative remedies is not to be lightly ignored, the existence of constitutional questions justifies intervention of a federal court. *See Hillsborough v. Cromwell,* 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946), and *Public Utilities Commission of Ohio v. United Fuel Gas Co.,* 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943). If plaintiff is required to liti-

---

**3.** In *Turner,* the United States Court of Appeals for the Seventh Circuit found it unnecessary to decide a "due process" constitutional challenge to 29 C.F.R. § 1910.95(b)(1) as such. In that case it is noted that capital outlay required for the "engineering controls" found infeasible was only $30,000 in the single plant involved.

**4.** Defendants point out that these are "civil remedial" proceedings rather than "criminal," but the distinction blurs when the proceedings start with a "citation" and can result in a "fine," along with mandatory orders. That dis-

tinction can have no reasonable significance in this case.

**5.** If defendants could specify some type of engineering or administrative control not yet considered which would appear feasible in all respects in one or a few plants deemed to be physically different from the others, that would be justifiable; but there is no indication of such to date, except the general affidavit mentioned in note 2, *supra.*

gate numerous similar cases through the administrative and appeal procedure provided, whenever and as often as defendants choose to issue single plant citations, its deprivation of due process of law will be complete and unrecoverable. It must seek the aid of the federal judiciary in an appropriate district court, as it has done. As Judge Hubert Will of the Northern District of Illinois observed in *United States v. American Honda Motor Company,* 273 F.Supp. 810, at 819, crediting Mr. Justice Frankfurter, "the due process provision of the Fifth Amendment * * * is essentially a recognition of the requirement of fundamental fairness and fair play under a given set of circumstances." In that case Judge Will dismissed an indictment, in part because of multiple prosecutions of supposed local conspiracies, saying at p. 820:

> "This is precisely the sort of harassment which fundamental fairness and the due process clause prohibit. The Government is not a ringmaster for whom individuals and corporations must jump through a hoop at their own expense each time it commands."

Defendant's attempt to distinguish that *Honda* case because of the finding there of a single national conspiracy, instead of a local one in each market as the Government there contended, falls completely, because that is precisely the problem here. The Government continues to say that plaintiff has 80 local noise problems, when in fact that is simply the arbitrary way defendants seek to treat a single national problem which exists almost identically in all the plants.

Certainly *Commissioner v. Sunnen,* 333 U.S. 596, 68 S.Ct. 715, 92 L.Ed. 898 (1947), relied upon by the Review Commission in refusing to apply collateral estoppel, and by defendants here, does elucidate that doctrine and distinguish it from *res judicata,* insofar as necessary for the issue then before that court. That doctrine is not quite so narrowly defined, however, in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), where the Court said collateral estoppel means simply "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (397 U.S. 443, 90 S.Ct. 1194).

■ Unquestionably, the issue of economic feasibility of machine enclosures has been litigated and determined in favor of plaintiff here on a national basis by a valid and final judgment in Continental Can I. Under all the circumstances shown here, it ill-behooves defendants to issue and prosecute local citations, each calling upon plaintiff to determine and implement feasible engineering and/or administrative controls and to "abate" the noise by a short day. To do so violates due process of law by harassment, and they are estopped from so doing by what has already transpired. Plaintiff has been found "not guilty" of violating the Occupational Safety and Health Act of 1970 (29 U.S.C. § 651ff.) in this respect by virtue of the determined fact that all known engineering controls are not feasible economically and because it has in place nationally a very effective personal employee protection program. Defendants must leave plaintiff alone on this issue, unless or until the Secretary (OSHA) can specify and prove the feasibility of some engineering or administrative controls, other than machine enclosures, which will do as effective a job of employee protection as the present personal protection devices at comparable cost on a national basis (i. e., in all, or substantially all, of plaintiff's 80 plants involved), or in some one or several plants shown to be unique.

Accordingly, IT IS ORDERED that defendants forthwith cease and desist from prosecuting any citations now pending on the issue of excessive noise in any of plaintiff's individual plants, that same be dismissed, and that defendants, their employees and agents, are enjoined from issuing any future citations charging such violation, short of the requirements specified hereinabove and with the approval of this court.

IT IS FURTHER ORDERED that this court retains jurisdiction of this cause for

1022

the purpose of enforcing, clarifying or modifying this order, upon a proper showing, with notice to all parties of any application for same.