**KROPP FORGE COMPANY, Petitioner,**

v.

**SECRETARY OF LABOR and Occupational Safety and Health Review Commission, Respondents.**

**No. 80–2160.**

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1981.
Decided Aug. 14, 1981.

Robert D. Moran, Washington, D. C., for petitioner.

John A. Bryson, Acting Sol. of Labor, U. S. Dept. of Labor, Washington, D. C., for respondents.

Before CUMMINGS, Chief Judge, SWYGERT, Senior Circuit Judge, and JAMESON,* Senior District Judge.

CUMMINGS, Chief Judge.

Kropp Forge Company has filed a petition to review an order of the Occupational Safety and Health Review Commission holding that Kropp violated 29 U.S.C. § 654(a)(2) [1] because of noncompliance with

---

* The Honorable William J. Jameson, Senior District Judge of the District of Montana, is sitting by designation.

1. 29 U.S.C. § 654(a)(2) provides as follows:
 "(a) Each employer—
 \* \* \* \* \* \*
 "(2) shall comply with safety and health standards promulgated under this Act."

Kropp had also been charged with violations of 29 U.S.C. §§ 666(a) and (b) through violations of 29 C.F.R. § 1910.95(b)(1) and 29 C.F.R. § 1910.1001(f)(1). The first of these citations was withdrawn by the Secretary, and the second was vacated by the Administrative Law Judge (App. 16). The petition for review challenged only the Commission's decision that Kropp had violated 29 U.S.C. § 654(a)(2) by not complying with 29 C.F.R. § 1910.95(b)(3).

an occupational safety and health standard, codified at 29 C.F.R. § 1910.95(b)(3), that provides in full:

"In all cases where the sound levels exceed the values shown herein,[2] a continuing effective hearing conservation program shall be administered."

The citation against Kropp charged, and after a hearing the Administrative Law Judge (ALJ) found that noise levels generated by forging hammers at Kropp's Chicago steel forging plant continuously exceeded 90 decibels and that Kropp's hearing conservation program lacked six elements necessary to constitute an effective program as required by the above-quoted standard.[3] The ALJ further found that the violation was "willful-serious" as charged and assessed a penalty of $5000. The Commission declined Kropp's petition for discretionary review so that the ALJ's July 2, 1980, opinion became the final order of the Commission on August 7, 1980, pursuant to 29 U.S.C. § 661(i). We conclude that the standard under which Kropp was cited is unenforceably vague and therefore reverse.

As a preliminary matter, we reject Kropp's contention that all evidence gathered during two December 1978 Occupational Safety and Health Administration (OSHA) inspections should have been suppressed on the ground that it was obtained pursuant to a warrantless search in violation of the Fourth Amendment. Kropp concedes that it granted OSHA permission to enter its premises on these occasions to verify an employee complaint, unrelated to the present charges, concerning excessive exposure to carbon monoxide fumes from fork-lift trucks. At the time of her first visit to the plant, on December 5, 1978, the OSHA compliance officer stated that her inspection would not go beyond the area of the complaint, i. e., the plant's "KFA Building" where the fork-lift trucks were located. However, after making an initial walk around the building, the compliance officer determined that sampling of noise levels generated by forging hammers located in the KFA Building was also required. Accordingly, the inspection was continued on December 13 and 19, at which times sampling for both carbon monoxide and noise levels was conducted.[4] Kropp argues that its consent was limited specifically to the carbon monoxide investigation so that the noise level samples were taken unlawfully.

■ The record shows, however, that at all times on December 13, the compliance officer was accompanied by Kropp's Safety Director and that on December 19, she and a second compliance officer were accompanied by the Safety Director and Kropp's General Manager. Both men had been informed that noise sampling would be conducted, and they raised no objections to the approximately five hours of sampling conducted on each day. Moreover, the Safety Director requested and received the results

2. The reference is to Table G–16 of 29 C.F.R. § 1910.95 which permits a level of 90 decibels of noise when averaged over an 8-hour work day with higher levels permitted for lesser periods of time.

3. The six elements listed in the citation were:
 (a) Regular, annual audiometric tests of employees exposed to sound levels in excess of Table G–16;
 (b) Employees with a 20 db or greater hearing loss, at any frequency, must be referred to an otolaryngologist or qualified physician;
 (c) Re-tests must be conducted of employees whose audiograms are considered unreliable or who show significant threshold shifts of 20 db or more at any frequency;
 (d) Appropriate and adequate hearing protection, as required by 29 C.F.R. § 1910.95(a), must be selected or used based on the noise spectrum present in a working environment in which the sound levels exceed Table G–16;
 (e) Employees exposed to sound levels exceeding Table G–16 must be trained in the proper use and care of hearing protection;
 (f) The employer must enforce the use of proper wearing of hearing protection for those employees who are exposed to sound levels exceeding Table G–16.

4. The noise level samples were obtained by placing audio dosimeters on the hammermen, helpers and other KFA Building employees, who wore the devices while they performed their duties. Sound level meter readings were also taken at the employees' ear levels to confirm the accuracy of the dosimeter readings. The samples showed that noise levels were at all times above 90 decibels.

from the noise sampling taken on both days. While it is true that Kropp refused entry to a compliance officer seeking to continue the noise inspection in January 1979, the only surveys attacked by Kropp are those that took place on December 13 and 19.[5] Since Kropp's representatives were present at all times during those inspections and did not raise any objections when informed of the intended sampling, any Fourth Amendment objection to those surveys was waived. *Marshall v. Western Waterproofing Co., Inc.,* 560 F.2d 947, 950–951 (8th Cir. 1977); *Dorey Electric Co. v. OSHRC,* 553 F.2d 357, 358 (4th Cir. 1977).

 Kropp next argues that the standard which it is said to have violated does not provide "fair warning" of what is required or prohibited and is therefore unenforceably vague under *United States v. L. Cohen Grocery Co.,* 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, and its progeny.[6] We agree. The rationale of *Cohen Grocery* has been applied in a number of decisions under the Occupational Safety and Health Act. In *Dravo Corporation v. OSAHRC,* 613 F.2d 1227, 1234 (3d Cir. 1980), for example, an employer was held not to be subject to sanctions for non-compliance with safety standards "without adequate notice in the regulations of the exact contours of his responsibility." The court applied the traditional rule that the applicability of penal sanctions in regulations is to be narrowly construed by the judiciary and stated that OSHA regulations must "be written in clear and concise language so that employers will be better able to understand and apply them," quoting from *Diamond Roofing Co. v. OSAHRC,* 528 F.2d 645, 650 (5th Cir. 1976). See also *Bethlehem Steel Corporation v. OSAHRC,* 573 F.2d 157, 161–162 (3d Cir. 1978); 4 Davis, *Administrative Law*

*Treatise* § 301.2. The regulation in issue here, providing only that "a continuing effective hearing conservation program shall be administered," misses the mark considerably.

Kropp, as noted, was cited for non-compliance because its program lacked the following six elements:

1. Annual audiometric tests.
2. Referral of employees to a physician.
3. Re-tests of employees with significant threshold shifts.
4. Selection and use of hearing protection.
5. Training in use of hearing protectors.
6. Enforcement of proper wearing of hearing protectors.

However, the standard does not give any warning to employers that their conservation programs must contain these six elements. Indeed, in proposing a change in the standard in 1974, the Secretary of Labor stated:

> "The current standard * * * does not explicitly require monitoring of the sound level of the employee's surroundings nor measurement of the individual employee's resulting exposure" (39 Fed.Reg. 37,774 (1974)).

Also a 1972 document that the Labor Department published as "A Guide to OSHA Standards," notes that "[s]ince audiometric tests are not specifically mentioned in the regulations, they are not specifically required" (App. 136). That publication defined "hearing conservation program" in the regulatory standard as referring to "audiometry—periodic checks on the hearing ability of individual employees—and to noise surveys—periodic checks of the noise level in the area in which employees are

---

5. Although Kropp moved to suppress all evidence gathered during the December 5, 1978, through May 21, 1979, OSHA investigation of its premises, the Fourth Amendment objection now pressed concerns only evidence gathered during the December 13 and 19 inspections. Kropp did not move to suppress the results of the January 8–9, 1979, inspections showing that noise levels remained in excess of 90 decibels.

6. See also *American Textile Manufacturers Institute, Inc. v. Donovan,* —— U.S. ——, ——, 101 S.Ct. 2478, 2505–06, 69 L.Ed.2d 185, where the Supreme Court struck down the wage guarantee provision in OSHA's cotton dust standard partly because, as here, post-hoc rationalizations of the agency "cannot serve as a sufficient predicate for agency action."

working" (*Idem.*). This official definition, which was satisfied by Kropp, does not contain the six elements Kropp was cited as failing to provide. Similarly, an OSHA Field Information Memorandum in 1974 provided that OSHA's official policy was "*not* requir[ing] audiometric testing" (App. 161; emphasis in original), again contradicting the present citation.

Even the compliance officer who conducted the December 1978 inspections of Kropp's plant testified that the six elements listed in the citation were not required by the then controlling regulation (App. 165–166) nor thought by her to be included in the standard (Tr. 490), and had not been included in a Field Operations Manual until April 20, 1979 (App. 40, 64), whereas the alleged violations here occurred in December 1978. Furthermore, on January 16, 1981, too late for this case, OSHA removed the one-sentence standard at issue in this case and replaced it with a new regulation which, like the 1974 proposal, contains all six elements listed on the citation at issue in this case (46 Fed.Reg. 4162–4164), thus acknowledging that these elements were not previously included in the standard before us.

Finally, it is noteworthy that in *Secretary of Labor v. B. W. Harrison Lumber Company*, 4 BNA OSHC 1091 (1976), an Administrative Law Judge held that 29 C.F.R. § 1910.95(b)(3), the regulation involved here, was unenforceably vague. His vacation of the OSHA noise citation was affirmed by the Commission by a 2–1 vote. One of the two majority members affirmed the ALJ on the vagueness ground, whereas

the other majority member affirmed the disposition because the citation did not conform to the statutory criteria. Although the Fifth Circuit affirmed the Commission because of the invalidity of the citation, the 1978 opinion of the court held that the citation reference to 29 C.F.R. § 1910.95(b)(3) was deficient because it merely parroted the words in the regulation that the employer failed to provide "a continuing effective hearing conservation program" and did not inform the employer of what was charged. 569 F.2d 1303, 1309. After this 1978 opinion of Judge Godbold, the Secretary had ample opportunity to amend the regulation, so that it would give proper notice to an employer and finally did so in January 1981.[7] More recently, in *Secretary of Labor v. Kraft Food, Inc.*, 9 BNA OSHC 2040 (March 17, 1981), an ALJ again found 29 C.F.R. § 1910.95(b)(3) unenforceably vague. This decision, in direct conflict with the result in this case, became a final order of the Commission on May 18, 1981.

The ALJ rejected Kropp's vagueness argument because

"The standard does not involve criminal or First Amendment activity and if the regulation affords reasonable warning of the proscribed conduct in light of common understanding, it is not constitutionally vague" (App. 5).[8]

His decision is erroneous because the pertinent parts of the OSH Act and regulations do impose "penal sanctions,"[9] and the regulation in issue does not give reasonable notice of the conduct said to be prohibited "in light of the common understanding." In-

---

7. The Secretary, of course, knew how to promulgate a proper regulation before then, as shown by his detailed 1976 standard for employee exposure to coke oven emissions. *American Iron & Steel Institute v. OSHA*, 577 F.2d 825, 827 (3d Cir. 1978). If such a technique had been employed in promulgating this sound level regulation, no fatal vagueness problem would have occurred.

8. The ALJ also relied on the fact that the regulation in dispute had been upheld by an ALJ in a prior OSHA case. See *Secretary of Labor v. Boise Cascade Corp.*, 5 OSHC 1242, 1977–78 OSHD para. 21,714 (1977), appeal filed, No. 77–2201 (9th Cir. May 31, 1977), appeal vacat-

ed (9th Cir. September 27, 1979). But see *Secretary of Labor v. B. W. Harrison Lumber Company, supra*, and *Secretary of Labor v. Kraft Food, Inc., supra*, with which we agree.

9. *Dravo Corporation, supra*, 613 F.2d at 1232; see also *Hoffman Construction Co. v. OSAHRC*, 546 F.2d 281, 283 (9th Cir. 1976); *Diamond Roofing Co. v. OSAHRC, supra*, 528 F.2d at 649; *Marshall v. Anaconda Company*, 596 F.2d 370 (9th Cir. 1979); *Continental Can Co., U.S.A. v. Marshall*, 455 F.Supp. 1015, 1020 n.4 (S.D.Ill.1978), affirmed, 603 F.2d 590 (7th Cir. 1979).

deed, the ALJ himself acknowledged that the six elements of the hearing conservation program upon which this citation is based were not shown to be the custom and practice in the forging industry, and there was in fact no evidence of the "common understanding." [10]

As in In the Matter of: *Establishment Inspection of: Metro-East Manufacturing Company*, 655 F.2d 805, 810–812 (7th Cir. 1981), involving a similar OSHA regulation, we find the regulation under which Kropp was charged to be unconstitutionally vague. Therefore, it is unnecessary to consider Kropp's other arguments as to why the Commission's order was defective. The order appealed from is reversed.

SWYGERT, Senior Circuit Judge, concurring.

I concur in Chief Judge Cummings' persuasive opinion. I must add, however, an explanatory note.

In the *Metro-East Manufacturing* case, I dissented because I believe that the requirement of employee sampling devices was quite reasonable under the applicable regulation. In this case, by way of contrast, Kropp Forge Company received no "fair warning" that the hearing conservation program included six separate elements, the noncompliance of which formed the basis of the OSHA charge against the company.

---

**10.** Since the record below contains no evidence as to the common understanding and practice of those working in the forging industry and even the ALJ concedes that the six-part hearing conservation program for which Kropp was cited was not the common practice in the forging industry, the Secretary's reliance on our decision in *Allis-Chalmers v. OSHRC*, 542 F.2d 27 (7th Cir. 1976), is misguided. See *Cotter & Company v. OSAHRC*, 598 F.2d 911 (5th Cir. 1979). As noted both in *Dravo Corporation, supra*, and *Diamond Roofing, supra*, when a regulation fails in its purpose because of vagueness the Secretary should remedy the situation by promulgating a clearer regulation, as he finally did this year, rather than forcing the judiciary to press to the limits by judicial construction.