Vermont Superior Court
Filed 10/04/23
Washington Unit

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 22-CV-04141

---

Kingsbury Companies, LLC v. Commissioner of Labor, State of Vermont

---

## Opinion and Order on Appeal

Following an inspection by Vermont Occupational Safety and Health Administration (VOSHA) Safety Compliance Officer Stephen Murray of a construction site, VOSHA issued Appellant Kingsbury Companies LLC a seven-item citation for violations of Vermont's Occupational Safety and Health Act (the Act), 21 V.S.A. §§ 221–232. Kingsbury contested the citation before the VOSHA Review Board. A hearing officer heard the case and affirmed all seven violations. The Board then conducted discretionary review, Code of Vt. R. 24-050-002 § 2200.91, on Kingsbury's request. It vacated Violation 6 and otherwise affirmed the hearing officer.[1] Kingsbury subsequently sought review here. 21 V.S.A. § 227(a). It argues that the citations are void and should be vacated because the inspection violated the law. Alternatively, it argues that none of the remaining six violations is supported by the record or warranted by the law.

This case arises out of a complaint filed with the Department of Labor by a person identifying himself only as Kingsbury job site employee. He complained about unsafe conditions at the site related to a crane that he operated, ladders, stairs, and confined

---

[1] Violation 6 is not at issue in this case.

spaces.[2]  In response, without a court order specifically authorizing it, Mr. Murray arrived at the site to inspect.  The Kingbury employee in charge assented to the inspection and accompanied Mr. Murray on it.[3]  The inspection led to the citations at issue.  The project involved the construction of a manure digesting facility in Salisbury that would supply power to Middlebury College.  The facility included, among other things, three large concrete tanks referred to as the north and south digesters and the hydrolyzer.

The Court makes the following determinations.

I.     Standard of Review

The Vermont Supreme Court has held that:

> The standard of appellate review in VOSHA cases is expressly set out in the Act itself:
>
>> The findings of the review board with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive.  (21 V.S.A. § 227(a)).
>
> The somewhat imprecise "substantial evidence" standard has received elucidation in several United States Supreme Court cases.  "'(S)ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . .  (It) must do more than create a suspicion of the existence of the fact to be established. . . .  it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is

---

[2] Kingsbury describes the employee as a disgruntled ex-employee whose complaint, after his employment had terminated, was calculated in bad faith to harass Kingsbury.  The State contests that characterization of the employee's status and motivations.  The Court declines to enter the fray because the complaining employee's status as currently or formerly employed and his subjective motivations are not relevant to this decision.  Moreover, the employee's apparent principal complaint about the crane, which evolved into Violation 6, was vacated by the Board.

[3] Kingsbury argues that the inspection was nonconsensual.  This issue is addressed below.

one of fact for the jury.'" It differs little, if at all, from the "clearly erroneous" test of V.R.C.P. 52(a).

*Green Mountain Power Corp. v. Commissioner of Labor and Industry*, 136 Vt. 15, 21 (1978). "To establish a violation, the Department of Labor must show that the employer 'had knowledge or constructive knowledge of the condition' violating the law." *Commissioner of Labor v. Eustis Cable Enterprises, LTD*, 2019 VT 2, ¶ 9, 209 Vt. 400, 404. Speculation is insufficient. *See id.* ¶ 10, 209 Vt. at 404.

II.    Preliminary Issues

As an initial matter, Kingsbury argues that all violations should be set aside because VOSHA failed to follow statutory requirements and its own procedures upon receiving the complaint and conducting the inspection. It maintains that those requirements and procedures are intended to protect employers, and VOSHA's failure to follow them prejudiced it by leading to an inspection that never should have occurred and that sprawled overzealously far beyond the scope of the complaint that prompted it, leading to violations that never should have been found and that did not in fact exist. It contends: "Among other things, this appeal presents the threshold question of whether VOSHA has an obligation to perform due diligence prior to launching an investigation based on a vague online tip. Here, an angry former employee used VOSHA to get revenge on Kingsbury by making a limited complaint concerning his job as a crane operator. VOSHA took this tip and ran with it, citing Kingsbury for numerous things unrelated to the actual crane complaint, which was based on a lie." *See supra* n.2 at 1.

Specifically, Kingsbury argues that: (a) according to OSHA's field operations manual, VOSHA, at most, should have conducted an inquiry rather than treating the complaint as "formal" and thus requiring an inspection; (b) the complaint also should not

have been treated as "formal" to the same effect under 21 V.S.A. § 206(f); (c) the complaint was too vague to justify an inspection under 21 V.S.A. § 206(f); (d) Mr. Murray improperly refused to produce a copy of the employee complaint at the time of the inspection; (e) Kingsbury did not consent to the warrantless inspection; and (f) the decision to inspect was arbitrary and thus invalid under Vermont's Administrative Procedures Act, 3 V.S.A. §§ 800–848.

None of these arguments suggests any due process or other constitutional or statutory violation or any fundamental unfairness remotely warranting the severe remedy of dismissal urged by Kingsbury. "Congress enacted [OSHA] 'to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources.'" *Green Mountain Power Corp. v. Comm'r of Lab. & Indus.*, 136 Vt. 15, 23 (1978) (citation omitted). "OSHA, being remedial and preventative in nature, is construed liberally in favor of the workers it was designed to protect." *Contractors Crane Service, Inc. v. Commissioner of Labor and Industry*, No. 2000-191, 2001 WL 36140451, *2 (Vt. Sept. 2001) (unpub. mem.).

(A)     *The Field Operations Manual*

Kingsbury asserts that under provisions of OSHA's Field Operations Manual (FOM), VOSHA should have treated the employee complaint as "informal" and conducted an "inquiry" rather than skipping to an inspection and, had it done so, no inspection ever would have occurred.[4] It is unnecessary to address the substance of this argument because Kingsbury is improperly trying to use the FOM as a source of enforceable rights.

---

[4] The State maintains, however, that under the FOM there was no irregularity with the decision to inspect.

The FOM is a set of internal policies and procedures—guidance materials for employees—not enforceable administrative rules. The FOM expressly includes this "disclaimer:" "This manual is intended to provide instruction regarding some of the internal operations of [OSHA], and is solely for the benefit of the Government. No duties, rights, or benefits, substantive or procedural, are created or implied by this manual. The contents of this manual are not enforceable by any person or entity against the Department of Labor or the United States [hence, VOSHA]. Statements which reflect current Occupational Safety and Health Review Commission or court precedents do not necessarily indicate acquiescence to those precedents." OSHA FOM, Abstract-2. Kingsbury has come forward with no authority to the contrary. *See Triumph Constr. Corp. v. Sec'y of Lab.*, 885 F.3d 95, 99 (2d Cir. 2018) ("The [FOM] is 'only a guide for OSHA personnel to promote efficiency and uniformity, [is] not binding on OSHA or the Commission, and [does] not create any substantive rights for employers.'"). Kingsbury's argument has no merit.

(B) *Treatment of Complaint as "Formal" under 21 V.S.A. § 206(f)*

Kingsbury also asserts that VOSHA erred under 21 V.S.A. § 206(f) by treating the employee complaint as "formal" and conducting an inspection for that reason. This argument fundamentally misunderstands the statutory scheme. Section 206(f) makes no distinction between "formal" and "informal" employee complaints. Rather, § 206(a), *on its face*, gives the Commissioner expansive discretion to "enter upon a premise . . . for the purpose of inspecting the premises within reasonable limits and in a reasonable manner, to determine whether the provisions of the VOSHA Code . . . are being observed. If entry is refused, the Commissioner or the Director may apply to a Superior judge for an order"

permitting such entry.[5]  *See* 29 U.S.C. § 657(a) (the federal counterpart is to the same

effect).  Section 206(f), on the other hand, says that when VOSHA receives an employee

complaint of certain specificity and it makes a certain finding, that it "shall" conduct a

special inspection.  Nothing in § 206(f) limits VOSHA's discretion to inspect under §

206(a)—the purport of § 206(f) is to command, not bar, an inspection in certain

circumstances.  Kingsbury's argument flips the script by turning a provision mandating

an inspection into one that bars it.  Kingsbury's approach is untethered to the statutory

language, and the Court rejects it.  *See Burkart Randall Div. of Textron, Inc. v. Marshall*,

625 F.2d 1313, 1321 (7th Cir. 1980) ("We can find no indication in the Act or in judicial

interpretations . . . that OSHA may not determine that an inspection is justified on the

basis of an informal employee complaint.").

(C)     *Vagueness under 21 V.S.A. § 206(f)*

Kingsbury argues that the employee complaint in this case was too vague to justify

an inspection under 21 V.S.A. § 206(f).  This is a variation on the interpretive flaw at

work in Section (B) above.  Section 206(f) makes a special inspection mandatory in

certain circumstances where there is an employee complaint ("notice"), including that

"The notice shall be reduced to writing, shall set forth with reasonable particularity the

grounds for the notice, and shall be signed by the employees or representative of

employees."  Again, this is a provision that can lead to a *mandated* special inspection.  It

is not a limitation on the Commissioner's discretion to inspect under § 206(a).

---

[5] VOSHA's broad discretion under § 206(a), thus, is subject to the employer's right to refuse the inspection, which then would require an administrative inspection warrant subject to constitutional standards.  *See generally Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978) (warrantless OSHA inspection without consent, except in limited circumstances, violates the Fourth Amendment).

(D)    *Production of the Complaint at the Time of the Inspection*

Kingsbury contends that the inspector improperly failed to hand over a hardcopy of the employee complaint at the time of the inspection. Section 206(f) provides that "A copy of the notice [the employee complaint] shall be provided the employer or his or her agent no later than at the time of inspection." The obvious purpose of this provision is to inform the employer of the nature of the complaint and hence the nature of the inspection.[6] In this instance, the inspector read the full complaint aloud, without objection, rather than handing it over. The State maintains that it was prompted by concerns as to distancing—the inspection took place in the earliest days (March 2020) of the pandemic. Kingsbury suggests that it nevertheless could have been handed over safely.

While that may have been a better practice to provide the physical copy, the Covid pandemic either necessitated or counselled in favor of additional cautions in various areas. Most importantly, there is no serious dispute that a full description of the contents of the notice was provided to Kingsbury and that is the principal purpose of Section 206(f). Kingsbury has proffered no palpable claim of prejudice relating to oral versus written notice. Without some authority supporting Kingsbury's argument, of which it has come forward with none, the Court fails to see how the technical failure to provide a hard copy of the notice could vitiate Kingsbury's consent to the inspection (see below) or otherwise warrant dismissal.

---

[6] A discretionary inspection under 21 V.S.A. § 206(a) is not necessarily provoked by a complaint and thus has no analogous notice provision.

(E)    *Consent to the Warrantless Inspection*

Kingsbury contends—at least nominally—that it did not consent to the inspection. Without consent, an administrative inspection warrant would have been required. 21 V.S.A. § 206(a); *see also infra* n.5 at 5. There was no warrant in this case, but neither was there any lack of consent.

Kingsbury does not suggest that it *refused* to permit the inspection. Rather, it argues, in essence, that it lacked capacity to consent due to the vagueness of the employee complaint (*i.e.,* how could it consent if it did not really know what it was consenting to?). The record, however, is clear that the inspector showed up to inspect, provided notice of the contents of the precipitating complaint, the employee in charge[7] permitted the inspection, accompanying Mr. Murray as he inspected, and that consent was never withdrawn. Nor is there any indication that the consent somehow was obtained by unfair means, such as trickery or overbearing conduct.

Kingsbury was free to refuse or limit consent and, thus, obligate VOSHA to seek a warrant if it were so inclined, shifting the determination of the propriety and scope of any inspection to a court at the relevant time (when VOSHA thought it should inspect). Having not done so, it is now improperly attempting to convert its own failure to refuse to consent at the time of inspection into a basis for dismissal after the fact. It has cited no authority that would support that outcome. The available case law is plainly to the contrary. *See, e.g., Kropp Forge Co. v. Secretary of Labor*, 657 F.2d 119, 122 (7th Cir.

---

[7] Kingsbury's suggestion at oral argument the person who provided the consent was an underling is not supported by the record. The employee, Larry Rabideau, described himself as the "Superintendent" and described his role as: "Running the whole project, keeping everything up on schedule, making sure everybody is moving, checking over the job site." Hearing Transcript at 343.

1981) ("Since [Employer's] representatives were present at all times during those inspections and did not raise any objections when informed of the intended sampling, any Fourth Amendment objection to those surveys was waived."); *Lake Butler Apparel Co. v. Secretary of Labor*, 519 F.2d 84, 88 (5th Cir. 1975) (Employer "cannot obtain a ruling on constitutionality when it did not assert its rights at the time of the inspection.").

Kingsbury's argument on this issue is not persuasive.

(F)     *Arbitrariness under the APA*

Finally, Kingsbury argues that the decision to inspect was "arbitrary" under the APA and should be voided, citing 3 V.S.A. § 801(b)(13)(A). That subsection defines "arbitrary." That is all. Subsection 801(b)(13)(B), which Kingsbury neither cites nor discusses, says this: "The General Assembly intends that this definition be applied in accordance with the Vermont Supreme Court's application of 'arbitrary' in *Beyers v. Water Resources Board*, 2006 VT 65, and *In re Town of Sherburne*, 154 Vt. 596 (1990)." Those cases address the Water Resources Board's classification as to public use of the Chittenden Reservoir (*Beyers*) and its determination that the then-current classification of a portion of the Ottauquechee River was contrary to the public interest (*Sherburne*). Kingsbury fails to explain how these cases, and the legislature's subsequent adoption of a statutory definition of "arbitrary" to flesh out its meaning in those contexts, has any bearing whatsoever on this case, and the Court fails to see any.

VOSHA received a complaint that it viewed as serious, and it decided to investigate, eventually inspecting the job site with Kingsbury's consent. If Kingsbury thought the inspection was unwarranted, whether because it was arbitrary or for any

other reason, it was free to decline consent so that its reasonableness could be tested in court. Instead, it consented.

Kingsbury's arbitrariness argument has no merit.

### III.    The Specific Violations

Kingsbury argues that all of the violations found by the Board either lack substantial evidence or amount to legal error. With one exception, the Court disagrees.

(A)    *Violation 1 (strain relief of cords)*
       *29 C.F.R. § 1926.405(g)(2)(iv)*

Kingsbury objects that Violation 1 (strain relief of cords) arose out of Mr. Murray "just . . . walking everywhere" and could not have been in plain sight within the reasonable scope of the inspection. The record is clear that the cords at issue were connected to a generator and a "concrete vibrator" located right next to the crane and the north digester, respectively, that themselves plainly were within the reasonable scope of the inspection. Mr. Murray testified that he noticed the violations incidentally when walking by, noting that he has a trained eye and violations jump out at him. Mr. Rabideau (who accompanied Mr. Murray on the inspection) testified that he did not believe that was possible. That is the thrust of the record on this point. The Board credited Mr. Murray's testimony on this issue.

The Board's determination does not lack substantial evidence. As in other contexts, credibility determinations generally are left to the discretion of the finder of fact. As the 7th Circuit has described:

> In attacking a credibility determination of the ALJ on appeal, [Employer] must overcome the great deference we accord the finder of fact, who is in a much better position than we to determine which witness is more believable. To carry this burden requires "uncontrovertible" evidence, which must take the form of documentary evidence or physical facts as long as the

testimony accepted by the ALJ is internally consistent or at least reasonably coherent and facially plausible.

*Union Tank Car Co. v. Occupational Safety & Health Admin.*, 192 F.3d 701, 706 (7th Cir. 1999) (citations omitted). Competing testimony, all that Kingsbury points to here, is insufficient.

> (B) *Violation 2 (Gaps in Scaffolding)*
> *29 C.F.R. § 1926.451(b)(1)(i)*

Kingbury argues that Violation 2 (gaps in scaffolding) is in error because the standard permits gaps larger than the standard when the employer can demonstrate that the gaps were necessary. Kingsbury argues that it demonstrated the necessity of larger gaps due to the curvature of the structure about which the scaffolding was constructed.

The cited standard reads, in relevant part, as follows:

(b) Scaffold platform construction.

> (1) Each platform on all working levels of scaffolds shall be fully planked or decked between the front uprights and the guardrail supports as follows:

> > (i) Each platform unit (e.g., scaffold plank, fabricated plank, fabricated deck, or fabricated platform) shall be installed so that the space between adjacent units and the space between the platform and the uprights is no more than 1 inch (2.5 cm) wide, except where the employer can demonstrate that a wider space is necessary (for example, to fit around uprights when side brackets are used to extend the width of the platform).

> > (ii) Where the employer makes the demonstration provided for in paragraph (b)(1)(i) of this section, the platform shall be planked or decked as fully as possible and the remaining open space between the platform and the uprights shall not exceed 9 ½ inches (24.1 cm).

29 C.F.R. § 1926.451(b)(1).

Kingsbury's argument that it, in fact, demonstrated necessity is meritless on its face. The Board found gaps of up to 11 inches in width between the walking surface and the wall, a finding that Kingsbury has not contested. Under 29 C.F.R. § 1926.451(b)(1)(ii), which Kingsbury does not cite, the maximum permissible gap required by necessity is 9 ½ inches.

Kingsbury also argues that there was testimony that the scaffolding was not used in any event. The cited testimony is to the effect that the scaffolding may not have been in use *on the day of the inspection*. Kingsbury cites no authority for the highly questionable proposition that a violation is actionable only if there is evidence that it reasonably could have harmed an employee on the day of the inspection. The scaffolding obviously was constructed to be used and had been in place long before the inspection. It presented a risk of use and a risk of danger in that event.

Finally, Kingsbury argues that the violation should not have been treated as "serious" under the FOM because that designation relates to a risk of death or serious bodily harm. Kingsbury takes nothing from this argument for two reasons. First, the provisions of the FOM do not provide Kingsbury with a source of actionable rights. *See supra* Section II(A) at 4–5.

Second, the record does not support it. Kingsbury cites testimony of Mr. Murray that it characterizes as conceding that the gaps were not such that an employee could have fallen completely through and hit the ground beneath. It then argues *ipse dixit* that, therefore, there was no risk of death or serious bodily harm.

Mr. Murray, however, did not concede that the gaps could not have allowed an employee to fall to the ground. More importantly, the cited testimony does not address

whether the gaps presented a risk of serious bodily harm or death. It is by no means clear that one would have to fall to the ground to be at risk of serious bodily injury from unsafe scaffolding. Other significant risks from dangerous gaps could also have been present. As far as the cited testimony goes, Mr. Murray also was concerned about contributing risk presented by insufficient weight tolerance of the guardrails.

        (C)     *Violation 3 (Competent Person to Oversee Scaffold Construction) 29 C.F.R. § 1926.451(f)(7)*

The Board found that Kingsbury violated 29 C.F.R. § 1926.451(f)(7), which provides: "Scaffolds shall be erected, moved, dismantled, or altered only under the supervision and direction of a competent person qualified in scaffold erection, moving, dismantling or alteration. Such activities shall be performed only by experienced and trained employees selected for such work by the competent person." A "competent person" is "one who is *capable* of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has *authorization* to take prompt corrective measures to eliminate them." 29 C.F.R. § 1926.450(b) (emphasis added). The Board held that Kingsbury had no such competent person in charge of the scaffolding. Kingsbury argues that the testimony was to the contrary.

The Board's error as to this violation is readily apparent from its findings. The hearing officer found substantially as follows:

> [E]ven if we were to accept as true that Mr. Tatro supervised these tasks, and that he possessed the requisite training and experience to do so as a competent person, the fact remains that, due to the numerous deficiencies with the scaffold, he clearly was not acting as a competent person at the time. Mr. Murray testified that the scaffolding had missing guardrails and planking issues, which no competent person would have approved.

The Board declined to modify this determination on discretionary review.

The purport of this determination is that because the scaffold was constructed poorly, then whoever was in charge of it must have been incompetent, effectively turning one violation (how it was constructed) into two (whoever did it must have been incompetent). By that reasoning, no scaffold could ever have been supervised by a competent person if any deviation from regulatory requirements were later found. This is error. The regulatory definition of "competent person" clearly looks to the person's capabilities and authority to take corrective action. The State points to no record evidence to the effect that Kingsbury failed to have a capable person in charge of the scaffolding with authority to take corrective action, notwithstanding any actual shortcomings. The burden below was on VOSHA to establish the violation. The Board effectively and improperly shifted the burden to Kingsbury to disprove it.

Violation 3 is vacated for that reason.

(D)     *Violation 4 (Unprotected Sides and Edges)*
        *29 C.F.R. § 1926.501(b)(1)*

The Board found that Kingsbury improperly left the edge of the hydrolyzer tank (a walking surface) unprotected by a safety system (such as guardrails) to prevent falls of greater than 6 feet. Kingsbury argues that the record shows that the edge was not a walking surface, no work was performed in the area, and the area was restricted to prevent use. In the Court's view, the record supports Violation 4.

Mr. Murray testified that there was backfill on one side of the wall allowing one to walk up to the edge, a ladder on the other side providing an access point into the hydrolyzer, and no guardrails. The ladder reasonably implies that someone did or would have, in fact, used it as an access point. He further testified that there was an electrical

"conduit" near the edge, further implying that employees had used the unprotected area. To the extent that Kingsbury argues that the area was restricted, its point is that there was red flagging cordoning off the area to prevent access. As Mr. Murray testified, however: "The red flagging, as you can see in picture 39, is down. Someone took it down most likely to put that electrical conduit at the perimeter of the hydrolyzer and didn't put it back up once they were done." Mr. Murray's testimony is sufficient to support this violation.

(E)     *Violation 5 (Toprail Capable of Withstanding the Application of Force) 29 C.F.R. § 1926.451(g)(4)(vii)*

This violation relates to whether a guardrail system on scaffolding next to an "open-air tank" could withstand sufficient force. There is no dispute that the guardrail had to be constructed to withstand 200 pounds of force, and that the traditional way of constructing it was not feasible due to the curvature of the structure. Kingsbury, instead, installed flexible "strapping." Mr. Murray testified that it is generally accepted in the industry that the strapping used is insufficient to comply with the 200-pound standard. Kingsbury points to testimony that it consulted with an engineer as to the strapping and that it hung a 200+ pound weight to it, which it supported. The Board expressly rejected Kingsbury's testimony as lacking credibility—witnesses were unable to identify the engineer who affirmed its use of strapping and there was no documentation that such a consultation in fact had occurred. It also was not persuaded that merely hanging a weight on the strapping was a sufficient way to demonstrate compliance with the standard.

The Board did not err in accepting Mr. Murray's testimony and rejecting that of Kingsbury's witnesses. Credibility determinations are for the finder of fact. Otherwise,

Mr. Murray's opinion as to industry standards could have been more detailed, but he is an experienced industry professional, has significant OSHA compliance training, and has substantial experience in his current position. *See* Hearing Transcript 8–12 (describing his professional background). The Board did not err in relying on Mr. Murray's experience and his technical opinion.

      (F)    *Violation 7 (Confined Spaces)*
                *29 C.F.R. § 1926.1203(a)*

This violation relates to whether Kingsbury properly identified "confined spaces" on the site. On discretionary review, the Board affirmed that the hydrolyzer was a "confined space" and had not been so identified. It declined to address whether the other tanks were unidentified confined spaces reasoning that its determination as to the hydrolyzer was sufficient to affirm the violation.

The regulatory definition of confined space is as follows:

Confined space means a space that:

(1) Is large enough and so configured that an employee can bodily enter it;
(2) Has limited or restricted means for entry and exit; and
(3) Is not designed for continuous employee occupancy.

29 C.F.R. § 1926.1202. Kingsbury concedes the first and third factors. It argues that the digester did not have "limited or restricted means for entry and exit," however, because it had multiple means of ingress and egress, specifically: an extension ladder and a "man hatch."

The Board found the violation, reasoning that ingress and egress may be limited or restricted, as here, despite more than one available way in or out. Its view is supported by an OSHA opinion letter that equates "limited or restricted means for entry and exit"

with "some impediment to egress." *See* opinion letter at https://www.osha.gov/laws-regs/standardinterpretations/2016-09-08.

The obvious purpose of identifying confined spaces under 29 C.F.R. § 1926.1203 is to further identify so-called permit-required confined spaces so that the employer can provide proper notice of them and their hazards to employees and take appropriate steps to mitigate those hazards. Limitations on ingress and egress limit employees' ability to respond to injuries or dangerous conditions. As Mr. Murray testified, "To put some—to put a crew of guys to work in—in a confined space no matter what the size of it if somebody was to get injured, having limited access and egress makes getting them assistance, whether it's first aid or being removed by emergency medical services, more of challenge." Hearing Transcript 50.

The key issue as the Court see it is whether reasonable access is somehow limited, not whether there is more than one possible point of access. As VOSHA program manager Daniel Whipple testified, a space is *not* "limited" for relevant purposes: "When an employee can exit a structure much the same as they would exit a room without any more limitations than exiting room." Hearing Transcript 236. The Court sees no error in the finding that the hydrolyzer was a confined space that should have been identified as such.

Kingsbury also argues that Mr. Murray's testimony was to the effect that the hydrolyzer presented none of the risks associated with confined spaces; and, therefore, it should not have been considered one. The violation, however, relates to the failure to *identify* the digester as a confined space, rather than the failure to take steps to mitigate risk after properly identifying it. More importantly, Kingsbury's representations as to

Mr. Murray's testimony are inaccurate. He plainly testified that there were risks present as to the hydrolyzer specifically:

A.     Okay. 29 shows the extension ladder that's used for access and egress in and out of the hydrolyzer. That's the only access. That's considered limited access and egress. You know other hazards that are visible down there, you know, it looks like the bottom of the tank is all wet. Could be slippery. Could be fall hazards down there. Housekeeping is not terrible. It's not bad and—

Q.     Take a look at 43.

A.     Okay, and 43 here we're looking at the form scaffold from what believe is the center wall in this digester and the end—the guardrails at the end of the scaffold are missing so there's fall hazard there. If you look at the concrete floor in the digester, housekeeping here is horrible. There's just debris everywhere.

Q.     And what does that tell you as far as this confined space?

A.     Well it contains hazards—known hazards that actually qualify as permit required confined space due to the number of hazards that are in there. It also shows on this whole side of the digester that there is no other way out.

Hearing Transcript 51–52.

Violation 7 is supported by substantial evidence.

<u>Conclusion</u>

For the foregoing reasons, Violation 3 is vacated; the Board's decision as to Violations 1, 2, 4, 5, and 7 are affirmed. This case is remanded to the Board to modify the citation accordingly.

Electronically signed on Thursday, September 28, 2023, per V.R.E.F. 9(d).

_____
Timothy B. Tomasi
Superior Court Judge