**GEORGIA PACIFIC CORPORATION, Petitioner,**

**v.**

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION; Secretary of Labor, Respondents.**

**No. 93–6503.**

United States Court of Appeals, Eleventh Circuit.

July 13, 1994.

---

Robert H. Buckler, Charles H. Morgan, Thomas L. West, III, Alston & Bird, Atlanta, GA, for petitioner.

Barbara Werthmann, Barbara A.W. McConnell, Bruce Justh, Office of the Solicitor, U.S. Dept. of Labor, Washington, DC, for respondents.

Before KRAVITCH, Circuit Judge, FAY and HENDERSON, Senior Circuit Judges.

PER CURIAM:

## I. STATEMENT OF THE CASE

### A. Course of Proceedings and Disposition in the Court Below

1. The Act standard at issue in this appeal states in pertinent part:

    **Powered Industrial Trucks.**

    . . . . .

    (n) *Traveling.*

    . . . . .

    (4) The driver shall be required to slow down and sound the horn at cross aisles and other locations where vision is obstructed. *If the load being carried obstructs forward view, the driver shall be required to travel with the load trailing.*

On July 25, 1989, a compliance officer for the Occupational Safety and Health Administration ("OSHA") investigated an accident which occurred at Georgia–Pacific's plant in Talladega, Alabama. Pursuant to the investigation, OSHA issued a citation to Petitioner, Georgia–Pacific Corporation ("Georgia–Pacific"), on August 14, 1989, for an alleged violation of a standard promulgated under the Occupational Safety and Health Act of 1970 ("Act"), set forth at 29 C.F.R. § 1910.-178(n)(4) [1] relating to the operation of forklifts. Georgia–Pacific timely contested the citation.

On October 26, 1989, Respondent, the Secretary of Labor ("Secretary"), brought this action to enforce the citation against Georgia–Pacific. The matter came before Administrative Law Judge James D. Burroughs ("ALJ") of the Occupational Safety and Health Review Commission on April 13, 1990.[2] The ALJ rejected Georgia–Pacific's argument that the standard is unenforceably vague, but concluded that the company had not violated the standard and vacated the citation. On July 30, 1991, the Secretary filed a Petition for Discretionary Review, and on August 5, 1991, Georgia–Pacific filed a Cross–Petition for Discretionary Review. The Petition for Review was directed on August 8, 1991.

On April 27, 1993, the Occupational Safety and Health Review Commission ("Review Commission") issued an order reversing the ALJ's finding that Georgia–Pacific had not violated the standard. The Review Commission stated that the standard was not unconstitutionally vague, concluded that Georgia–Pacific had violated the standard and assessed a penalty of $480.00. This appeal followed.

(emphasis added)

2. The Occupational Safety and Health Review Commission ("Commission"), is an independent adjudicative forum for citation disputes. 29 U.S.C. §§ 659, 661. When an employer contests an OSHA citation, a hearing is held by an administrative law judge of the Commission. A party dissatisfied with the decision of the ALJ may then petition for discretionary review by a three-member Commission panel. 29 U.S.C. §§ 659(c), 661(j).

## B. Statement of Facts

Georgia–Pacific is a paper and wood products manufacturer based in Atlanta, Georgia. The citation at issue concerns the safety of forklift operations at Georgia–Pacific's plywood manufacturing plant in Talladega, Alabama. Georgia–Pacific primarily employs forklifts to transport stacks of lumber from one area of the plant to another.

The specific forklift operation which is the subject of this appeal took place in the "press area" of Georgia–Pacific's plant. The press area includes the intersection of two aisleways. One aisleway runs past two large plywood presses ("press aisle"), while the other aisleway, which intersects the first, runs to the plant's rail car line from the plywood stacking area ("rail-to-stacking aisle").

Two plywood presses in the press area compress sheets of wood to form plywood. The plywood is then stacked on platforms adjacent to the press. A typical stack of plywood ranges from 50 inches to 54 inches high. Each stack of plywood is removed from the press platform by a forklift and taken to the plywood stacking area for transport. After picking up a load of plywood from the presses, a forklift operator must back a few feet away from the press, turn and travel forward along the press aisle. The forklift travels approximately 50 feet from the press in a straight line until it reaches the intersection with the rail-to-stacking aisle where it makes a 90 degree left turn and travels 40 feet to the stacking area. Approximately 70 such trips are completed by the forklifts during an average eight-hour shift at the plant.

On July 22, 1989, a forklift operated by Donald Garrett ("Garrett") was traveling in the forward direction carrying a load of plywood from the press to the stacking area. The load of plywood was 54 inches high, 51 inches deep and 99 inches wide. Garrett was carrying the load six inches above the floor, making the total height of the load about 60 inches. As Garrett turned into the intersection of the press and rail to stacking aisles, the forklift struck and killed a Georgia–Pacific employee who was squatting down painting a column.

Following the investigation, the Secretary issued a citation to Georgia–Pacific, which stated in pertinent part:

29 C.F.R. § 1910.178(n)(4): Industrial Truck Driver(s) were not required to travel with the load trailing whenever the load obstructed forward view.

(a) Aisleway between number one press and skinner saw bins. On July 22, 1989, a forklift was being used to haul a load of plywood. The operator was traveling in a forward direction and his view was obstructed by the load.

(R2–1–2). Responding to this accident, but before the Secretary's investigation, Georgia–Pacific voluntarily instituted a rule requiring forklift operators who remove the plywood from the press area to travel in reverse with their load trailing. Following this change in operation, the management at the Talladega plant received numerous complaints from the forklift operators and their union claiming that driving backwards was both difficult and unsafe. Thereafter, Georgia–Pacific decided to contest the citation at issue.

## C. The Hearing Before the Administrative Law Judge

At the evidentiary hearing before ALJ Burroughs, the Secretary offered the testimony of two witnesses regarding their interpretation of the standard set forth in 29 C.F.R. 1910.178(n)(4). The first witness testified that it was hazardous to operate a forklift with a 54–inch load in the forward direction, but that a 12–inch load may not obstruct the forward view. The Secretary's second witness testified that an obstructed view exists whenever the operator cannot see what is on the floor surface seven to ten feet in front of the forklift.

Georgia–Pacific then tendered the testimony of their first witness who stated that a forklift operator's view in the press area is more limited when traveling in reverse than forward direction with a typical size load. Georgia–Pacific's second witness stated that a forklift operator's view, while carrying a load in the forward direction, is not obstruct-

ed within the meaning of the standard because the driver is able to see a standing pedestrian all the way up to zero feet in front of the load. He further testified that the preferred and safer method to operate forklifts was in the forward direction.

Faced with largely stipulated or uncontroverted facts concerning the operation of the forklifts in the press area, the ALJ found:

> It seems clear that the words "obstructs forward view," as used in the standard, were used to indicate their applicability when the operator does not have a clear view of the path of travel in the forward direction. This is consistent with § 1910.-178(n)(6) which requires the driver to "keep a clear view of the path of travel." The standard also recognizes that there will be some obstruction encountered in forklift operations.

(R2–16–14). The ALJ interpreted the words "obstructs forward view" to apply only when the operator cannot see any part of a pedestrian walking or standing in an upright position, holding that "[i]f the operator will at all times have a clear view of some part of an employee in an upright position, the operator can proceed in a forward direction." (R2–16–15). The ALJ believed that the Secretary's interpretation of the standard would require that all loads of any size be trailed. (R2–16–16). The ALJ went on to conclude that "[t]he forklift is designed for forward direction and is better utilized and controlled in a forward direction." (R2–16–21). Accordingly, the ALJ vacated the citation.

### D. On Appeal to the Review Commission

On appeal to the Review Commission, the Secretary abandoned the arbitrary "seven-to-ten foot" rule and relied instead on an entirely new definition of "obstructs forward view." In the Secretary's initial brief, the term "obstructs" was defined to include those situations in which the load would prevent the operator from seeing a pedestrian kneeling, sitting or bending over in front of the load. (R3–20–4). The Secretary's reply brief attempted to broaden this standard to include

employees who may be crouching. (R3–22–7).

The Review Commission rejected the ALJ's conclusion that the operator's view is only obstructed within the meaning of the standard if the operator cannot see an upright pedestrian. (R3–28–11). It noted that the language of the standard did not explicitly limit its protection to upright pedestrians and should be construed to protect persons in the forklift's path who might be kneeling or bending. (R3–28–11–12). In its decision, the Review Commission interpreted "obstructs" as follows:

> "obstructs" means that the load being carried forward blocks the operator's view such that it is reasonably foreseeable that the forklift operator could not see and could therefore hit employees working in the area, thus endangering employees that the standard seeks to protect.

(R3–28–8). The Review Commission acknowledged that "in applying this definition [to the citation at issue], the results will vary depending on such factors as the size of the load, the speed at which the forklift is traveling, and the number and positions of employees working in or near the aisles of the press area." (R3–28–8). The Review Commission concluded that the Secretary had proven that the operator's view was obstructed under the conditions present at the Georgia–Pacific plant. The Review Commission concluded that Georgia–Pacific and the ALJ had "exaggerate[d] the difficulties in forklift operation allegedly posed by the standard." (R3–28–15). Accordingly, the Review Commission reinstated the citation.

### II. STANDARD OF REVIEW

The Secretary's interpretation of an ambiguous regulation is subject to the same standard of substantive review as any other exercise of delegated lawmaking power. *Batterton v. Francis,* 432 U.S. 416, 425–26, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977).[3] When considering remedial legisla-

---

**3.** In *Batterton* the Supreme Court stated:

> [The regulation] can be set aside only if the Secretary exceeded his statutory authority or if

tion such as the OSH Act and its implementing regulations, the purported vagueness of a standard is judged in the light of its application to the particular facts of the case. *Faultless Div. v. Secretary of Labor*, 674 F.2d 1177, 1185 (7th Cir.1982), *citing PBR, Inc. v. Secretary of Labor*, 643 F.2d 890, 897 (1st Cir.1981); *McLean Trucking Co. v. OSHRC*, 503 F.2d 8, 10–11 (4th Cir.1974). To pass constitutional muster a regulation must provide a fair and reasonable warning of what it prohibited. *Faultless*, 674 F.2d at 1185.

▇▇▇ We recognize "that an agency's construction of its own regulations is entitled to substantial deference," *Martin v. OSHRC*, 499 U.S. 144, 150, 111 S.Ct. 1171, 1175, 113 L.Ed.2d 117 (1991) (*quoting Lyng v. Payne*, 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986)); *Brock v. Williams Enters. of Georgia, Inc.*, 832 F.2d 567, 569–70 (11th Cir.1987), if the Secretary's interpretation is "consistent with the regulatory language and is otherwise *reasonable.*" *Martin*, 499 U.S. at 156, 111 S.Ct. at 1178 (emphasis in original); *Brock*, 832 F.2d at 569–70. We should "uphold the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *AFL–CIO v. OSHA*, 965 F.2d 962, 970 (11th Cir.1992) (citations and quotations omitted). However, where the Secretary's interpretation of a regulation is either unconstitutionally vague as applied or unreasonable given the regulated activity, we may refuse to accept the Secretary's interpretation. We find the Secretary's interpretation of 29 C.F.R. § 1910.178(n)(4) both unconstitutionally vague as applied and unreasonable, therefore, we reverse.

### III.   DISCUSSION

*Unreasonable*

▇▇▇ Because the Secretary promulgates the standards under the OSH Act, the Secretary is held to be in a better position than the Commission to reconstruct and interpret the

purpose of the regulation. *Martin*, 499 U.S. at 152, 111 S.Ct. at 1176. The OSH Act of 1970 establishes a comprehensive regulatory scheme designed "to assure so far as possible ... safe and healthful working conditions" for "every working man and woman in the Nation." 29 U.S.C. § 651(b). The primary purpose of the particular regulation at issue in this case is to ensure that forklifts, when carrying a load in the work place, are operated in the manner that is most safe. We must therefore determine whether the Secretary's interpretation of the phrase "obstructs forward view" contained in 29 C.F.R. § 1910.-178(n)(4) is consistent with the regulatory language and reasonable given the intent of the regulation.

The design and rigging of forklifts indicate that the intended and preferred method of operation is in the forward direction. The operator's seat and controls are situated so that the operator faces the forklift mechanism. This design allows the operator to maneuver heavy loads in extremely tight areas where trucks and other transportation devices are unable. One drawback of the design is the obstruction caused by the forklift rigging itself, compounded by the obstruction caused by the load carried, will at all times cause the operator's field of vision to be limited to some extent. This impairment is common when using forklifts and has led to the promulgation of other regulations such as the first sentence of 29 C.F.R. § 1910.178(n)(4) which requires a driver to "slow down and sound the horn at cross aisles and other locations where vision is obstructed." In addition, we note that many forklifts and similar machines are equipped with audible and/or visual devices to warn individuals of their presence in the immediate area.

To give effect to any of the various interpretations of the phrase "obstructs forward view" put forth by the Secretary would give rise to several illogical and unreasonable results. First, we believe that such strict interpretations would require all forklifts, regardless of the size of the load carried or the

the regulation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

*Id.* at 426, 97 S.Ct. at 2406, *quoting* 5 U.S.C. §§ 706(2)(A), (C).

degree of obstruction, to travel with the load trailing. We find this unreasonable because it is clear that in certain situations it would be safer to travel in the forward direction with a partially obstructed view than it would be to travel with the load trailing. In fact, the uncontradicted evidence in this case supports this fact. Second, such interpretations would often result in the operation of a forklift with the load trailing even though the operator's field of vision to the rear is more limited than it is to the front.[4] We think it unreasonable for the Secretary to construe the standard so strictly concerning the forward operation of forklifts without taking into consideration the degree of obstruction that may exist to the rear of the forklift. Finally, it would be equally unreasonable to interpret such a regulation in a way that would for all practical purposes ban the use of forklifts.[5]

### Vagueness

When considering remedial legislation such as the OSH Act and its implementing regulation, the purported vagueness of a standard is judged in the light of its application to the facts of the case. *Faultless*, 674 F.2d at 1185. Like other statutes and regulations which allow monetary penalties against those who violate them, an occupational safety and health standard must give an employer fair warning of the conduct it prohibits or requires. *Diamond Roofing Co. v. O.S.H.R.C.*, 528 F.2d 645, 649 (5th Cir.1976).[6] A statute or regulation is considered unconstitutionally vague under the due process clause of the Fifth or Fourteenth Amendments if it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Donovan v. Royal Logging Co.*, 645 F.2d 822, 831 (9th Cir.1981).

In the instant case, the issuance of the citation and the litigation which has ensued demonstrates the vagueness of the regulation. Neither the Secretary nor the experts have been able to settle upon a single definition of the phrase "obstructs forward view." Even during oral argument, counsel for the Secretary proposed yet another interpretation of the phrase.[7] Although not dispositive, this fact necessarily implicates the adequacy of notice to the regulated party.

The Secretary, as enforcer of the Act, retains the responsibility to state with ascertainable certainty what is meant by the standards she has promulgated. *Diamond,* 528 F.2d at 649. The Act grants to the Secretary, not the Commission, the Review Commission nor this Court the power to amend the regulations where necessary. We find here, that where the Secretary is unable to settle upon a single definition of a critical term or phrase of its own regulation, that the regulation is unconstitutionally vague as applied for failing to give sufficient guidance to those who enforce OSHA penalties, to those who are subject to civil penalties, or to those

---

4. We note that a majority of forklifts are equipped with a cage structure, to protect the operator in case of a roll over, and a propane fuel tank that obstruct the operator's field of vision to the rear. In addition, the human body's ability to turn the head to look directly backwards while in the seated position also restricts an operator's field of vision to the rear.

5. This is not to suggest that other precautionary steps should not be undertaken or required. The use of an audible and/or visual warning devices, installation of mirrors at dangerous intersections or on the forklifts themselves, restrictions as to personnel allowed in the aisleways during forklift operations, etc. ... were all discussed by counsel at oral argument and may prevent similar accidents in the future.

6. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), this Circuit adopted as binding precedent those decisions rendered by the Fifth Circuit prior to October 1, 1981.

7. While we recognize that interpretations furnished are undeserving of judicial deference, *Martin*, at 155, 111 S.Ct. at 1178, *citing Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 212, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988), we note this only to illustrate the vagueness of the regulation. Attorney for the Secretary of Labor espoused no less that three different definitions of the phrase "obstructs forward view" at oral argument, and conceded that the phrase was in fact ambiguous. This is so because it is simply not possible to operate a forklift with a load and not have some partial obstruction to the operator's view.

**1006**

courts who may be charged to interpret and apply the standards. When a regulation fails in its purpose because of vagueness, the Secretary should remedy the situation by promulgating a clearer regulation rather than forcing the judiciary to press the limits of judicial construction. *Kropp Forge Co., v. Secretary of Labor,* 657 F.2d 119, 124 n. 10 (7th Cir.1981); *Dravo Corp. v. O.S.H.R.C.,* 613 F.2d 1227, 1232 (3d Cir.1980); *Diamond,* 528 F.2d at 649.

## IV. CONCLUSION

Because we find the Secretary's interpretation of the phrase "obstructs forward view" unreasonable and because we find the regulation as applied void for vagueness, we REVERSE the ruling of the Review Commission, vacate the citation, and leave it up to the Secretary to promulgate a reasonable and specific standard.

REVERSED.