**UNITED STATES of America, Plaintiff,**

**v.**

**PITT–Des MOINES, INC., Defendant.**

**No. 96 CR 513.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 18, 1997.

Daniel Francis Gallagher, Querrey & Harrow, Ltd., Chicago, IL, R. Henry Moore, Buchanan Ingersoll Prof. Corp., Pittsburg,

PA, George Patrick Lynch, Lisle, IL, for defendant.

Mark S. Hersh, U.S. Atty. Office, Chicago, IL, for U.S.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

The United States of America is prosecuting Defendant Pitt–Des Moines, Inc. for its alleged willful violations of two regulations promulgated under the Occupational Safety and Health Act (the "OSH Act"). Before the court are various motions to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b). For reasons set forth below, the court denies these motions.

### Background

A federal grand jury, on August 19, 1996, indicted defendant on two counts of violating 29 U.S.C. § 666(e), which makes it a criminal misdemeanor offense for an employer willfully to violate any OSH Act regulation where that violation causes the death of an employee. (Def.'s Mot. to Dismiss the Indictment Based Upon Violation of the Def.'s Constitutional Rights Against Double Jeopardy and Res Judicata ("Def.'s Mot. to Dismiss # 1") at 4). Specifically, the indictment charges that defendant willfully violated two OSH Act regulations—29 C.F.R. §§ 1926.751(a), the "two-bolt rule", and 1926.21(b)(2), the "training rule". Id. The violations allegedly related to a deadly accident, which occurred during construction of the United States Postal Service General Mail Facility (the "Post Office"). Id. at 1.

The general contractor of the Post Office construction project hired defendant to fabricate and erect the structural steel for the Post Office project. (Gov't Resp. to Def.'s

Pretrial Mot. ("Gov't Resp.") at 1). On November 3, 1993, during construction of the Post Office, sixty plus structural steel members collapsed without warning, causing the death of two ironworkers. (Def.'s Mot. to Dismiss # 1 at 1; Gov't Resp. at 2). The Occupation Safety and Health Administration ("OSHA") immediately investigated this accident. (Def.'s Mot. to Dismiss # 1 at 1; Gov't Resp. at 3). OSHA's investigation included interviews with witnesses, review of documents, and expert examination and analysis. (Gov't Resp. at 3). These investigations persuaded OSHA that the failure of a connection between a specific and identified horizontal beam and vertical column caused the collapse. (Gov't Resp. at 4). As a result, on May 2, 1994, OSHA issued defendant one "serious" and one "willful" citation. Id. The "willful" citation charged the company with willful violations of both the two-bolt rule and the training rule. Id.

Defendant contested the citations. On May 23, 1994, the Department of Labor ("DOL") filed its complaint against defendant with the Occupational Safety and Health Review Commission ("OSHRC"), who assigned it to an ·Administrative Law Judge ("ALJ"). (Def.'s Mot. to Dismiss # 1 at 2; Gov't Resp. at 5). Defendant commenced discovery on June 24, 1994, serving the Secretary with interrogatories and a document request.[1] (Def.'s Mot. to Dismiss # 1 at 2). Shortly thereafter, the DOL moved for a stay of the civil proceedings, citing the potential for a criminal prosecution of the matter by the Department of Justice ("DOJ"). Id. On August 4, 1994, OSHA filed an unopposed motion for a stay stating that it had referred the matter to the DOJ.[2] (Gov't Resp. at 5). On August 11, 1994, the ALJ granted the stay. (Def.'s Mot. to Dismiss # 1 at 2).

---

1. Defendant claims it tendered over 1,900 documents to the government and all of the witnesses requested by OSHA for depositions and sworn statements in the civil matter. It is unclear from defendant's statements of fact when exactly all of this took place. (Def.'s Mot. to Dismiss # 1 at 2).

2. The Government states that OSHA *referred* the matter to the DOJ prior to its August 4, 1994 motion for a stay. (Gov't Resp. at 5). Defendant, however, states that prior to August 4, 1994 the Government merely made an *institutional*

*commitment* to refer the matter to the DOJ. (Mem. of Law in Support of the Def.'s Mot. to Dismiss the Indictment or Suppress Evidence Acquired by the Gov't in Violation of the Def.'s Rights to Due Process of Law at 3). Defendant identifies November 30, 1994 as the time OSHA actually conferred with the DOJ. *Id.* However, since all events relevant to defendant's argument occurred after the November 30th date, this discrepancy is immaterial to this court's opinion.

On October 14, 1994, defendant moved the ALJ to lift the stay of the administrative proceeding because OSHA had not been diligent in transferring its information to the U.S. Attorney's office. (Mem. of Law in Support of the Def.'s Mot. to Dismiss # 2 at Ex. A). However, defendant withdrew this motion six weeks later in order to provide the DOJ "a full opportunity to carefully evaluate the case." (Def.'s Mot. to Dismiss the Indictment or Suppress Evidence Acquired by the Gov't in Violation of the Def.'s Rights to Due Process of Law ("Def.'s Mot. to Dismiss # 2") at 3); (Gov't Resp. at 6). On December 2, 1994, the ALJ extended the stay until on or about February 2, 1995. *Id.* On February 1, 1995, defendant again requested that the ALJ lift the stay, because defendant believed OSHA was using the stay to obtain an unfair advantage in discovery.[3] *Id.* The ALJ, on February 8, 1995, granted this request, and, soon thereafter, ordered the DOL to respond to defendant's legitimate discovery requests. *Id.*

The DOL continued to refuse defendant's discovery requests, stating that compliance would jeopardize the Government's ongoing criminal investigation. (Def.'s Mot. to Dismiss # 1 at 3; Gov't Resp. at 6). Subsequently, the ALJ ordered the government to comply, but the government refused despite an acknowledgment that such refusal could result in dismissal of the civil case. *Id.* at 3–4. Accordingly, defendant moved to dismiss the case, and, on April 28, 1995, the ALJ dismissed the complaint with prejudice and on the merits, because of "the Government's failure to bring a criminal proceeding and its refusal to proceed in the civil proceeding." (*Id.*; Gov't Resp. at 6 (citing Final Order, OSHRC Docket No. 94–1355)). The DOL appealed this order to the OSHRC. (Def.'s Mot. to Dismiss # 1 at 4).

On March 24, 1997, the commission reversed the ALJ's dismissal decision and re-manded the civil case for reinstatement and issuance of a stay pending the criminal proceeding's completion. *Secretary of Labor v. Pitt–Des Moines, Inc.,* OSHRC Docket No. 94–1355 (March 24, 1997). Among other things, the commission was concerned that there was a significant potential for discovery abuse *without* the stay. *Id.*

### Analysis

■ A motion to dismiss an indictment is more similar to a civil Rule 12(b)(6) motion, which tests the sufficiency of the underlying complaint (here the indictment). *United States v. Apple,* 927 F.Supp. 1119, 1121 (N.D.Ind.1996). Thus, as with a rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the indictment. *See United States v. Wood,* 925 F.2d 1580, 1581(7th Cir.1991) (citation omitted); *See also Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990) (motion to dismiss); *Colfax Corp. v. Illinois State Toll Highway Auth.,* 79 F.3d 631, 632 (7th Cir.1996) (rule 12(b)(6) motion to dismiss) (citation omitted). Additionally, all uncontested allegations to which the parties had an opportunity to respond are taken as true. *See Alexander v. City of Chicago,* 994 F.2d 333, 335 (7th Cir.1993). Lastly, the court may take judicial notice of matters of public record. *See Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994); *Wood,* 925 F.2d at 1582.

## I. VAGUENESS

Defendant first argues that the OSH Act regulations upon which the indictment is based are invalid and unenforceable because they are unconstitutionally vague. Consequently, defendant argues, the indictment too is invalid. The court disagrees.

In addition, defendant points out that one of OSHA's attorneys formerly involved in the civil case is now on the DOJ's criminal prosecution team. *Id.* at 5. According to the Government, this attorney was involved in the civil case, but, because of her knowledge of the facts, the Government removed her from that assignment to assist in the criminal investigation. (Gov't Resp. at 30–31).

---

**3.** Specifically, defendant refers to OSHA actions during the stay whereby "OSHA investigators primarily responsible for the civil investigation interviewed an ironworker employed by the defendant at the time of the accident." (Def.'s Mot. to Dismiss # 2 at 3). This action, according to defendant, amounted to OSHA using the stay to obtain an unfair advantage in discovery for both the criminal and civil proceedings. *Id.*

The court examines vagueness challenges to regulations that do not involve the fundamental rights of the defendant in light of the facts of the case at hand on an "as-applied" basis. *See Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 1857–58, 100 L.Ed.2d 372 (1988); *see also Faultless Div. v. Secretary of Labor,* 674 F.2d 1177, 1185 (7th Cir.1982) ("When considering remedial legislation such as the OSH Act and its implementing regulations, the vagueness ... is judged ... in light of its application to the facts of the case. "). Thus, the court will uphold the challenge only if the regulation is impermissibly vague in *all* of its applications. *See Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191–92, 71 L.Ed.2d 362 (1982). "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Id.* at 495, 102 S.Ct. at 1191.

The test courts apply here is "whether the standard is so indefinite that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Allis–Chalmers Corp. v. Occupational Safety and Health Review Commission,* 542 F.2d 27, 30 (7th Cir.1976) (citing *Ginsberg v. New York,* 390 U.S. 629, 643, 88 S.Ct. 1274, 1282–83, 20 L.Ed.2d 195 (1968)). "[A]ll that due process requires is a fair and reasonable warning." *Faultless Div.,* 674 F.2d at 1185 (citing *Allis–Chalmers Corp.,* 542 F.2d at 30); *see also Maynard,* 486 U.S. at 361, 108 S.Ct. at 1857–58 (vagueness challenge may be overcome in a particular case if a reasonable person would know that their conduct is at risk). A regulation must contain minimum guidelines to govern law enforcement and provide a basis for determining what to do in order to comply. *See Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (holding that courts must determine whether a statute or regulation provides a person of ordinary intelligence a fair and reasonable warning of what conduct it prohibits or requires); *see also Faultless Div.,* 674 F.2d at 1185; *Georgia Pacific Corp.*

*v. Occupational Safety and Health Review Commission,* 25 F.3d 999, 1004 (11th Cir. 1994). A regulation will pass constitutional muster even though it is not drafted with the utmost precision. *Faultless Div.,* 674 F.2d at 1185 (citation omitted).

According to the above standards, courts have denied vagueness challenges to statutes with terms that are less than definite. For instance, in *Allis–Chalmers* the Seventh Circuit faced a vagueness challenge to a general OSH Act requirement that ordered employers to use scaffolding in certain situations. *See* 542 F.2d at 29. Specifically, the requirement defined a scaffolding situation as one in which work could "not be done safely from the ground or from solid construction." *Id.* at 30 (citing 29 C.F.R. § 1910.28). In *Allis–Chalmers,* the SOL cited the petitioners after a compliance officer observed one of the petitioner's employees removing a manhole cover from a crane while standing on a sideways rotary kiln. *See id.* at 29. Petitioners claimed the requirement at issue was unenforceable because they "could not reasonably have foreseen its applicability." *Id.* The Seventh Circuit Court of Appeals disagreed. The court reasoned that the regulation provided the petitioner with a reasonable warning that they were to use scaffolding when work "could not be done safely in light of common understanding and practices." The court then held that the regulation met "the minimum requirements of clarity to satisfy constitutional due process." *Id.* at 30 (quoting *United States v. Petrillo,* 332 U.S. 1, 4, 67 S.Ct. 1538, 1540, 91 L.Ed. 1877 (1947) ("so long as the regulation here in afforded a reasonable warning of the proscribed conduct in light of common understanding and practices, it will pass constitutional muster. ")).

In contrast, courts have voided statutes on vagueness grounds in a number of situations, all dissimilar to the present case. For instance, in *Georgia Pacific Corp. v. Occupational Safety and Health Review Comm.,* 25 F.3d 999 (11th Cir.1994), the Eleventh Circuit upheld a vagueness challenge to a statute where experts, when asked for a definition of the contested phrase in the regulation, could not settle upon a single definition. Similarly, in *Kropp Forge Co. v. Secretary of*

*Labor,* 657 F.2d 119 (7th Cir.1981), the Seventh Circuit voided for vagueness a regulation that required "a continuing effective hearing conservation program." The SOL believed the petitioner had violated the regulation because its program lacked six very specific elements. *See id.* Since the regulatory language did not even mention the six required elements, the Seventh Circuit held that the regulation did not adequately warn the petitioners and was vague. *See id.; see also Matter of Metro–East Mfg. Co.,* 655 F.2d 805 (7th Cir.1981).

■ This court's task is to determine whether the regulations at issue here gave defendant adequate warning that, as alleged in the indictment, knowingly and willfully releasing a steel beam from the hosting line during final placing without using two bolts or the equivalent, and failing to instruct its employees on the same is unlawful. The regulations at issue are the "two-bolt rule" and the "training rule." The two-bolt rule, 29 C.F.R. § 1926.751(a), states:

> During the final placing of solid web structural members, the load shall not be released from the hoisting line until the members [4] are secured with not less than two bolts, or the equivalent, at each connection and drawn up wrench tight.

The "training rule," 29 C.F.R. § 1926.21(b)(2), states:

> The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury.

With regard to the two-bolt rule, defendant points to two statements within the regulation that render its meaning enigmatic to a person of ordinary intelligence: "final placing" and "not less than two bolts, or the equivalent." With regard to the former phrase, "final placing", defendant argues that "[t]here is nothing which specifies or explains what the 'final placing' of structural members is as opposed to initial or temporary placing."

(Def.'s Vagueness Mem. at 6). Defendant argues that it "is almost never the case in the practice of structural steel erection that a member is 'finally placed' when it is removed from the hoisting line." (Def's Vagueness Reply Mem. at 3). To the contrary, according to defendant, connecting crews change a member's connection bolts many times after its release from the hoisting line and before the project is over. *Id.* "[W]hen a member is released from a hoisting line, it cannot be construed as the 'final placing' of the member." *Id.* For a number of reasons, the court disagrees.

It is helpful in some situations for the court to look to the plain meaning of the terms and discern whether those terms would be clear to a person of ordinary intelligence. *See, e.g., United States v. The Spy Factory, Inc.,* 951 F.Supp. 450, 468 (S.D.N.Y. 1997). According to Webster's Dictionary, "final" is an adverb meaning occurring at the end. *See Webster's II New Riverside University Dictionary* 478. "Placing" means to put in a particular position. *See id.* at 897. The court believes this language provides an employer with sufficient warning that once the member takes its ultimate position within the structure it must be secured. *See United States v. Bohai Trading Company, Inc.,* 45 F.3d 577, 580 (1st Cir.1995) (holding that the statutory use of the term "production", which petitioner argued left the reader helpless to understand what aspect of the production process being regulated, did not render statute vague because, although not a model of legislative craftsmanship, it was clear the term encompassed the entire production process from beginning to end).

Defendant argues the phrase is vague because before the project is complete it changes an object's bolts a number of times. Defendant, however, gives no indication that during this *bolting* and *rebolting* they *place* the object in various positions before they *place* it in it final position. The court fails to see how *bolting* or fastening an object relates to its ultimate location. Thus, according to this phrase, in light of common understand-

---

4. The term "members" refers to steel beams used during structural steel assembly. *See* 29 C.F.R. § 1926.751.

ing, the two-bolt rule gets triggered when an employer locates an object in its position within the structure, regardless of whether it will be fastened only loosely before final bolting. Therefore, the phrase passes constitutional muster.

■ Defendant next argues that the phrase "not less than two bolts, or the equivalent," is vague because it "contains no clarifying or supplemental regulations, rules or notice which informs an employer and potential defendant" what it means. (Def.'s Vagueness Mem, at 3). Defendant's argument fails for a couple of reasons. First, this is not a situation where a regulation fails to contain minimum guidelines that govern its enforcement, and provide a basis for defendant to determine what compliance requires. *See Kolender*, 461 U.S. at 357, 103 S.Ct. at 1858. Rather, the regulation is quite clear that at no time can an employer use less than two bolts when fastening in place a finally positioned object. Although, as defendant points out, the regulation fails to specify what the DOL had in mind for the phrase "or the equivalent", a regulation will pass constitutional muster even though it is not drafted with the utmost precision. *See Faultless Div.*, 674 F.2d at 1185.

Additionally, this is unlike the situations in the cases cited above in which courts voided regulations where agencies cited petitioners for failing to perform specific acts that the regulations did not mention. *See Kropp Forge Co.*, 657 F.2d 119 (regulation vague as applied where SOL required use of six specific elements that the regulation did not mention); *Metro–East Mfg. Co.*, 655 F.2d 805 (regulation vague where SOL required use of a device not mentioned in the rule). To the contrary, OSHA cited defendant for failing to use two bolts as stated in the rule. Similarly, unlike the regulation in *Georgia Pacific*

*Corp.*, 25 F.3d 999, there is no indication that the SOL or experts have ever disagreed upon the definition of this phrase. Therefore, this minimum requirement of at least two bolts is enough for the regulation to provide a person of ordinary intelligence a fair and reasonable warning of the conduct it requires.[5] *See Faultless Div.*, 674 F.2d at 1185.

Moreover, on March 9, 1993 and April 6, 1993, the Post Office warned defendant that its conduct was in violation of OSHA's two-bolt rule. (Gov't Resp., Exs. 5–9). This fact alone is all that due process requires. *Faultless Div.*, 674 F.2d at 1185 (citing *Allis–Chalmers Corp.*, 542 F.2d at 30); *see also Maynard*, 486 U.S. at 361, 108 S.Ct. at 1857–58 (vagueness challenge may be overcome in a particular case if a reasonable person would know that their conduct is at risk). Based on these warnings, defendant had a reason to know its conduct was at risk, and as applied to defendant the regulation was not vague.

■ Defendant also argues that the training rule is ambiguous in that it fails to provide employers with adequate notice of the conduct it requires. The court disagrees.[6] In *National Industrial Constructors, Inc.*, the Eighth Circuit confronted an identical challenge to this very training rule. 583 F.2d 1048 (8th Cir.1978). The court, persuaded by an Occupational Health and Safety Commission opinion sustaining the rule against a vagueness attack, also sustained the regulation. The commission had held that "the provision, while broad, is clear and requires: '(1) instruction in safety measures and applicable regulations, and (2) instructions on how employees may recognize and thereby avoid unsafe conditions.'" *NIC*, 583 F.2d at 1054 (citing *Secretary of Labor v. Henkels & McCoy, Inc.*, OSHRC Docket No.

---

**5.** Defendant adds that in many situations two bolts would not be sufficient to fasten a member in place safely. This, however, is not for the court to determine. *See Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. at 494–95, 102 S.Ct. at 1191–92 ("[A] court should … examine the complainant's conduct before analyzing other hypothetical applications of the law."). The question of whether defendant in fact used the "equivalent" of two bolts also is not before this court.

**6.** The court is not persuaded by defendant's argument that the SOL made it clear this rule was not sufficiently specific. The statement in 29 C.F.R. § 1926.454 refers to the training rule only as applied to employees on scaffolds. The fact that the SOL felt that context required more specific instruction standards does not affect this court's vagueness analysis of the rule applied in this particular situation.

8842 (Aug. 3, 1976)). The Eight Circuit Court of Appeals, adopting the commission's holding, then concluded that "29 C.F.R. § 1926(b)(2) sufficiently warns employers of the conduct required and is not impermissibly vague. The regulation, at a minimum requires that an employer apprise its employees of applicable regulations and issue general instructions on how employees may recognize and avoid dangerous conditions." *Id.* at 1054. This court agrees, and accordingly the training rule is not vague as applied to defendant.[7]

■ Finally, defendant argues that the court should dismiss the indictment because it is constitutionally insufficient. This court disagrees. "The Government does not face a particularly demanding standard in opposing a motion to dismiss an indictment." *United States v. Apple,* 927 F.Supp. 1119, 1120 (N.D.Ind.1996). An indictment is sufficient if it satisfies the following test: (1) it states all the elements of the offense charged, (2) it informs the defendant of the nature of the charge so that he may prepare a defense, and (3) it enables the defendant to plead the judgment as a bar to later prosecution for the same offense. *United States v. James,* 923 F.2d 1261, 1265 (7th Cir.1991) (citing *United States v. Roman,* 728 F.2d 846, 850 (7th Cir.), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984)).

Defendant's argument is not that the indictment failed to identify the elements of the offense charged. Rather, defendant argues that, in order to inform it of the charge it must defend, the indictment needed to state the location of the alleged violation, the steel members involved, and specifically what instruction it failed to give. The indictment, however, alleged enough information to inform defendant of the nature of the charge—willful violations of both the two-bolt rule and training rule, resulting in deaths—so that it could plead whether or not it believed it violated those rules. Specifically, the indictment alleges that the deaths of ironworkers

Thornmeyer and Newsome on November 3, 1993, resulted from the collapse of steel members, stemming from defendant's willful failure to comply with two specific OSHA standards (cited and quoted in the indictment). The Government's failure to include in the indictment the additional facts defendant identifies did not render the indictment unconstitutionally vague. *See United States v. Mosley,* 786 F.2d 1330, 1334 (7th Cir.), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986) ("When an indictment contains all the essential elements of the charged offense, the accused may obtain the factual proof supporting the charge, if vital to his defense, by a motion for a bill of particulars. ").

In any event, defendant had actual notice of the details of the charges. In late 1996, defendant asked the government to clarify certain aspects of the charges. On November 20, 1996, the government faxed a letter to defendant's counsel stating:

As you requested, I am writing this letter to confirm what I told you on the phone concerning our evidence on the "causation" issue. Your concern, as you expressed it to me, was whether our prosecution theory focuses solely on the connection between collector beam A–3550 and column A–1469, or whether we intend to argue that some other OSHA violation caused the deaths of ironworkers Thornmeyer and Newsome. My answer is that we do not intend to argue that any other violations caused the ironworkers' deaths; our focus on causation will be on PDM's failure to properly secure collector beam A–3550 to column A–1469 (through erection angle A–1285), and its related failure to properly train its workers to make such connections in compliance with OSHA standards. As you know, it seems beyond dispute that this particular connection was the source of the collapse.

7. This court additionally notes that, with regard to both rules, the fact that OSHA cited defendant for "willful" violations of the regulations means OSHA found defendant violated them after knowing their terms. *See Hoffman Estates,* 455 U.S. at 498, 102 S.Ct. at 1193 (stating in dicta that "the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").

As you also know, we *do* expect to have evidence of other improperly secured connections because these are relevant at least to the issue of willfulness, but it is not our theory that these particular violations were direct causes of the collapse and the deaths.

(Gov't Resp., Ex. 10, Letter (emphasis in original).) The civil OSHA citations contain similar details of the two OSHA violations on which the criminal indictment is based, including identifying the steel members that were improperly bolted. (*See* Gov't Resp., Ex. 1, Complaint.) Because the indictment is sufficiently detailed, and because defendant had actual notice of numerous additional details, defendant's argument that the indictment is constitutionally insufficient is unpersuasive.

## II.   INVALID PROMULGATION

■ Defendant's motion to dismiss also challenges the procedures used twenty-five years ago to promulgate the OSHA regulations at issue. OSHA adopted these regulations as occupational safety and health standards under § 6(a) of the OSH Act on its effective date.[8] They were originally promulgated under the Construction Safety Act ("CSA"), 40 U.S.C. § 333 et seq. Essentially, defendant argues that the regulations were not validly promulgated under the CSA because they became final without thirty days notice, as required by § 553(d) of the Administrative Procedure Act, 5 U.S.C. § 551 et seq. Defendant argues that since the CSA regulations were invalidly promulgated, they were not established on the effec-

tive date of the OSH Act and could not be summarily adopted under § 6(a) of the OSH Act.[9] Defendant also argues that the two-bolt rule additionally is invalid because it was substantially modified before becoming final without undergoing another notice and comment period.

The Government in turn argues that this court should adopt the approach of the Eight Circuit Court of Appeals in *National Industrial Constructors*, 583 F.2d 1048 (8th Cir. 1978). The Eighth Circuit held that a party cannot raise procedural challenges to OSH Act standards in an enforcement proceeding. In *National Industrial Constructors*, an employee engaged in the construction of a fossil fuel power plant fell fifty-four feet, suffering serious injuries. *See id.* at 1049. OSHA subsequently cited the employer for violating several of its regulations, including the training rule that is at issue in this matter. *See id.* The employer contested the citations before an ALJ, who held in favor of OSHA. *See id.* On appeal, the employer moved the Eighth Circuit to dismiss the complaint because the regulations, as adopted by the OSH Act from the CSA, were invalidly promulgated. *See id.* at 1050.

However, the court dismissed the case on the grounds that, under § 6(f) of the OSH Act, APA-procedural challenges to a regulation solely can be raised within sixty days of becoming effective—not in an enforcement proceeding. *See id.* at 1052. To reach this conclusion, the court looked to Congress' discussions regarding the scope of § 6(f),[10] not-

---

8.   Section 6(a) of the OSH Act allowed for summary adoption for certain rules because "of the severity of the industrial safety problem; the purpose of the procedure was to enable the Secretary of Labor to establish as rapidly as possible national occupational health and safety standards with which industry was familiar." *Daniel International Corporation v. OSHRC*, 656 F.2d 925, 926 (4th Cir.1981).

9.   Defendant also argues that § 3(10) of the OSH Act, which defines the phrase "established Federal Standards," refers to any standards in effect on the date of Congress' *enactment* of the OSH Act (December 29, 1970), as compared to its *effective* date (April 17, 1971). However,

> The term "established Federal Standard" means any operative occupational safety and health standard established by any agency of

the United States and presently in effect, or contained in any Act of Congress in force on the date of enactment of this Act.

29 U.S.C. § 652(10). The court declines to interpret this section as defendant wishes because to do so would render meaningless the phrase "on the date of enactment of this Act."

10.   Congress has discussed the scope intended for pre-enforcement review under § 6(f):

> While [§ 6(f)] would be the exclusive method for obtaining pre-enforcement judicial review of a standard, the provision does not foreclose an employer from challenging the validity of a standard during an enforcement proceeding.

*National Industrial Constructors*, 583 F.2d at 1052 (quoting S.Rep.No. 91–1282, 91st Cong., 2d Sess. Reprinted in (1970) U.S.Code Cong. & Admin. News, 5177, 5184).

ing that it was clear that Congress did not intend pre-enforcement review under § 6(f) to be the only way to challenge a regulation's validity because certain *substantive* problems with a regulation may not manifest themselves until after the sixty day pre-enforcement period expires. *See id.* However, the court held that *procedural* attacks were distinguishable from substantive ones because they were immediately apparent and need not "await the test of time." *Id.* Additionally, the court noted that an "agency's interest in finality, coupled with the burden of continuous procedural challenges raised whenever an agency attempts to enforce a regulation, dictates against providing a perpetual forum in which the Secretary's procedural irregularities may be raised." *Id.* Based on this distinction between substantive and procedural claims, the court held that an employer could not raise procedural claims based solely on the SOL's failure to comply with APA requirements during the enforcement proceeding, confined such claims to the sixty-day pre-enforcement period, and barred the employer from raising the claim. See *id.* at 1052–53.

The Sixth Circuit has followed the reasoning of the Eighth Circuit in *National Industrial Constructors See Advance Bronze, Inc. v. Dole,* 917 F.2d 944, 951 (6th Cir.1990) (adopting *National Industrial Constructors* reasoning in order to hold that "this court will not allow [petitioner] to escape liability by raising a procedural attack upon [the regulation]."). However, the Fifth Circuit and the Ninth Circuit declined to follow the reasoning of the Eighth Circuit in *National Industrial Constructors See Deering Milliken, Inc. v. OSHRC,* 630 F.2d 1094 (5th Cir. 1980) (rejecting *National Industrial Constructors* analysis, because there was no evidence that the legislature intended to distinguish between substantive and procedural challenges with regard to § 6(f), thus they allowed procedural challenges to regulations in enforcement proceedings based on a strong presumption that agency action is reviewable in federal court); *Marshall v. Union Oil Co. of Cal.,* 616 F.2d 1113 (9th Cir. 1980) (also rejecting *National Industrial Constructors,* on grounds similar to *Deering Milliken, Inc.,* and holding that they could

review, in enforcement proceedings, procedural challenges to regulations).

Acknowledging this split in the circuit courts, the Fourth Circuit Court of Appeals chose to take a position in the middle. *Daniel Int'l Corp. v. OSHRC,* 656 F.2d 925, 930 (4th Cir.1981). In that case, the court faced a procedural challenge to OSHA's adoption and promulgation of the CSA standards, including the training rule. *See id.* at 926. In reviewing the claim the court ruled that "[e]ven if an employer may raise a procedural challenge in an enforcement proceeding, the employer still must demonstrate that it has suffered *prejudice* because of the administrative action." *Id.* at 930 (emphasis added) (citing *Market Street Ry. Co. v. Railroad Comm'n,* 324 U.S. 548, 562, 65 S.Ct. 770, 777, 89 L.Ed. 1171 (procedural due process is not to . be trivialized by formal objections that have no substantial bearing on the rights of the parties)). The court concluded that where the defendant had over six years to prepare for an attack against the rule, which is the reason for the thirty-day notice requirement, and where the CSA standards did not even apply to the defendant at the time of their promulgation, the defendant failed to show prejudice. *See id.* at 931. Thus, the court refused to consider the merits of its argument. *See id.*

This court finds that the Fourth Circuit's approach to this issue represents a reasonable compromise between competing principles. Consequently, this court too will only review the merits of defendant's procedural challenge to the regulations if defendant first demonstrates that it suffered prejudice because of the agency's action. In this regard, defendant first argues that it was prejudiced because it was deprived of the opportunity to challenge these standards before this enforcement proceeding. The court disagrees. In *Daniel International Corp.,* the Fourth Circuit stated that the purpose of the 30–day notice requirement was to "afford persons affected a reasonable time to prepare for the effective date of a rule ... or take any other action which the issuance of rules may prompt." *See id.* at 931 (citing Administrative Procedure Act Legislative History, 79th Cong., 2d Sess. 201 (1946)).

Defendant, over twenty-five years after their promulgation, cannot claim that it has not had a reasonable time to prepare for the rules. *See id.* (challenge six years after the CSA regulations' promulgation was too long a time for respondent to show prejudice).

■ Defendant additionally claims that the promulgation of the final version of the two-bolt rule after modification of the originally proposed rule, without additional rule-making, prejudiced it. "A final rule is not invalid for lack of adequate notice if the rule finally adopted is 'a logical outgrowth' of the original proposal." *American Medical Assoc. v. United States*, 887 F.2d 760, 767 (7th Cir.1989). For instance, in *American Medical Assoc.*, the regulation at issue, in its initially proposed form, contained "an entirely different approach to determination of allocable membership receipts" than the finally adopted rule. *Id.* at 764. The court, however, concluded that the final rule was a "logical outgrowth" of the initial rule in that it: dealt with the identical issue, merely altering its administration so it was more consistent and fair; and was contained in the proposed rule and merely eliminated some other ways of calculating the allocations. *See id.* at 769. Consequently, the court concluded that the public had the opportunity to comment on all aspects of the final rule. *See id.; Compare Marshall*, 616 F.2d at 1115 (where the Secretary changed the wording of the standard in issue to make it a mandatory regulation and not an advisory one, the alteration affected the promulgation's validity).

Here, defendant argues that the phrase "wrench tight at each connection" contained in the final version of the two-bolt rule, but not in its initially proposed form, was not "a logical outgrowth" of the proposed rule. Thus, defendant claims, additional rulemaking was required before the two-bolt rule's promulgation, and such failure prejudiced it because the prior rulemaking did not explain this phrase so that the parties could argue against its inclusion. This court disagrees. As in *American Medical Assoc.*, the court finds that this phrase deals with the identical issue contained in the initial rule—fastening finally placed members with two-bolts or the equivalent—and merely serves to make the

rule more fair and capable of consistent application. Additionally, the phrase was implied in the initial rule, because bolts must be tightened in some way, and the promulgators just added it as a way for determining compliance with the rule. Thus, because the modification did not require additional rule-making, and defendant cannot argue that it was prejudiced by the lack thereof. Defendant did not convince the court that the twenty-five year old procedural defects of the regulations caused it prejudice, the court will not review its other claims, and the court denies defendant's motion.

## III. DUE PROCESS

■ Defendant argues that the Government violated the defendant's Fifth Amendment rights to due process of law. As a result, they ask the court to either dismiss the indictment, or suppress all evidence obtained by OSHA in violation of its rights. Defendant's due process rights were not violated and its motion is denied.

The gist of defendant's argument is that the Government impermissibly commingled its civil prosecution of defendant with its criminal prosecution, and, as a result, this criminal prosecution violates defendant's due process rights. In support of this claim, defendant first argues that OSHA "filed a civil complaint with an eye towards seeking criminal indictments, [and] engaged in extensive one-sided discovery in the civil prosecution" while refusing to comply with defendant's discovery requests. (Def.'s Mem. of Law in Support of Mot. to Dismiss # 2 at 1). Furthermore, defendant argues that OSHA violated its rights and the stay when two OSHA inspectors, after the stay was in place and the matter referred to the DOJ, interviewed a person who had been an employee of the defendant at the time of the accident. *Id.* Lastly, defendant argues that the Government's employment in the criminal proceeding of an OSHA attorney involved in the civil proceeding violates its due process rights. Defendant's claims are without merit.

The commingling of civil and criminal investigations by the Government or a government agency may in some circumstances vio-

late a defendant's rights. An agency may not use a civil summons if its sole purpose is to prepare for a criminal case. *See United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), *called into doubt by statute* as stated in *United States v. Cahill,* 920 F.2d 421, 428 (7th Cir.1990), *cert. denied,* 500 U.S. 934, 111 S.Ct. 2058, 114 L.Ed.2d 463 (1991). Furthermore, once an agency refers a matter to the Government for criminal prosecution, it may not use its civil authority to continue to gather information for the criminal case.[11] *See LaSalle National Bank,* 437 U.S. at 298, 98 S.Ct. at 2358. The vitality of this rule, however, is debatable. *See Cahill,* 920 F.2d at 428 (7th Cir.1990) ("there is some debate whether *LaSalle National Bank* remains good law ... we nevertheless proceed on the basis that it does.").

In *Cahill* the defendant argued that under *LaSalle National Bank,* once a civil agency refers a matter for criminal prosecution, government civil authorities cannot continue to investigate for the government prosecutors. *See* 920 F.2d at 428. While inquiring into failure of First Financial Savings & Loan, the Federal Home Loan Bank Board ("FHLBB") instigated an investigation of the defendant, the owner of one the savings loan's institutional customers. *See id.* at 423. After some investigation, the FHLBB referred the matter to the U.S. Attorney. *See id.* Upon referral, the FHLBB investigator and the U.S. Attorney met to discuss the two investigations. *See id.* Specifically, the U.S. Attorney informed the FHLBB investigator that: the two investigations were separate, and the U.S. Attorney would only receive information, not disclose information to, the FHLBB. *See id.* As a result, the FHLBB gave the government certain statements that the defendant made to the FHLBB.

The Seventh Circuit, proceeding on the assumption that *LaSalle National Bank* was still good law, distinguished it from *Cahill. See id.* In particular, the court pointed to two reasons why *LaSalle National Bank* was inapplicable. First, unlike the IRS in *LaSalle National Bank,* the FHLBB "has only limited civil authority and has no ability to

investigate criminal cases itself." *Id.* Consequently, the court found that a *LaSalle*-type of abuse was· minimized when the FHLBB pursued a civil investigation. *See id.*

Additionally, the court found that at all times the two investigations were separate and distinct, and thus the civil investigation was not conducted for the purpose of gaining criminal evidence. The court reached this conclusion upon examination of two facts: (1) the FHLBB alerted defendant prior to cooperation that any evidence of criminal conduct would be forwarded to the DOJ; and (2) the civil and criminal investigators worked to keep the investigations separate. *See id.* Accordingly, based on the above points, the *Cahill* court concluded that there was no unlawful commingling.

The matter before the court is comparable to Cahill and unlike *LaSalle National* Bank. First of all, like the FHLBB, OSHA has only limited civil authority and no ability to investigate a criminal case itself. It always refers criminal matters to the DOJ. Consequently, LaSalle-type abuses are minimized. *See id.* Additionally, as in *Cahill,* defendant was warned that the civil authorities would be communicating its criminal evidence findings to the Government. As early as August 4, 1994, six weeks after OSHA issued a civil citation, the Government's stay request alerted the defendant to the fact that OSHA would be referring the matter to the Government for criminal prosecution. It is apparent from the facts that defendant knew that OSHA would subsequently be forwarding information relevant to the Government's prosecution to the DOJ. In fact, on October 14, 1994, defendant moved to lift the civil stay on the grounds that "the Complainant was not diligent inasmuch as by September 20, 1994 it had not transferred the file to the U.S. Attorney's office." (Mem. of Law in Support of the Def.'s Mot. to Dismiss # 2 at Ex. A) (emphasis added). Although this warning was not express as the one in *Cahill,* where the FHLBB explicitly alerted the defendant that any evidence of criminal conduct could be forwarded to the DOJ, defendant cannot claim it lacked this knowledge. For pur-

---

**11.** *See supra* note 2.

poses of due process, defendant was alerted that OSHA would be forwarding information to the Government.

Defendant argues that unlike the parties in *Cahill*, OSHA and the Government did not work to keep the investigation separate, thus amounting to a due process violation. The court disagrees. First of all this case did not demand the type of precautions employed in *Cahill*. In *Cahill* the two investigations overlapped for a period of nearly two-months. In contrast, here the ALJ stayed the civil case before the criminal investigation began, thus ensuring there would be no discovery complications resulting from overlapping discovery periods. Thus, like the Seventh Circuit Court of Appeals in *Cahill*, the court finds that discovery was not commingled.

Similarly, the court is not persuaded by defendant's claims regarding the allegedly violative OSHA investigation by interview of an employee during the period of the stay, and the Government's employment of one of the civil investigators on its criminal investigation team. First of all, with regard to the investigations beyond the scope of the stay, the only violation defendant alleges is one of the stay. However, defendant does not offer the court any information on the terms of the stay or how the OSHA investigators violated it, thus making it difficult for this court to determine if OSHA in fact violated the stay.[12]

Furthermore, even if OSHA violated the stay, defendant does not show how OSHA's action harmed defendant and violated defendant's due process rights. First, defendant does not explain how this action by OSHA was used to conduct an unlawful criminal investigation, thereby commingling the two investigations. Second, defendant does not allege that the OSHA investigators transmitted the information obtained in violation of the stay to the DOJ. Absent such evidence, the court fails to see how, assuming a violation of the stay, OSHA's *civil* actions affected the DOJ's *criminal* investigation. Accord-

ingly, this court is not persuaded that OSHA's actions violated defendant's due process rights.

Similarly, defendant's argument does not enlighten the court to the unfairness involved with regard to the Government's use of an attorney formerly involved in the civil matter.[13] Defendant points out that his attorney conducted the depositions in the civil investigation, and now is on the criminal team. Defendant does not, however, claim that this action was unlawful. Assuming arguendo that it was, information the attorney obtained on criminal conduct in the depositions would be forwarded by OSHA to the Government anyhow. Moreover, the fact that the attorney at issue *left* the civil action to join the criminal team, thus preventing overlapping team members, convinces this court that the two investigations are not being commingled, but rather are two separate cases. Consequently, defendant fails to convince the court that its rights to due process have been violated by the unlawful commingling of the civil and criminal investigations surrounding it. The court, persuaded by this circuit's decision in *Cahill*, believes the Government's actions were constitutional.

## IV. DOUBLE JEOPARDY AND RES JUDICATA

Defendant also moves the court to dismiss the indictment because it violates its rights against double jeopardy and is precluded by the ALJ's decision dismissing the civil case with prejudice and on the merits. The court, however, denies this motion because these claims are moot.

Without a justiciable case or controversy federal courts cannot exercise their power. *Sandra Buckley, IRA v. Archer–Daniels–Midland Co.*, 111 F.3d 524, 526 (7th Cir. 1997). Federal courts have no jurisdiction to review moot cases. *Id.* This requirement not only applies at the time a case is filed, but rather it lasts throughout the pendency of the action. *Board of Educ. of Downers*

---

12. The OSHRC recently extended the stay without mentioning any prior violations of it by OSHA. *See Secretary of Labor v. Pitt–Des Moines, Inc.*, OSHRC Docket No. 94–1355 (March 24, 1997).

13. *See supra* note 3.

*Grove Grade Sch. No. 58 v. Steven L.,* 89 F.3d 464, 467 (7th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1996). A case is mooted when the issues presented "are no longer live or the parties lack a legally cognizable interest in the outcome." *Sandra Buckley, IRA,* 111 F.3d 524, 526 (citing *Stewart v. Taylor,* 104 F.3d 965, 969 (7th Cir.1997)).

In this case, the ALJ decision upon which defendant relies to show both finality and jeopardy no longer exists, and thus neither do the above claims. *See Secretary of Labor v. Pitt–Des Moines, Inc.,* OSHRC Docket No. 94–1355 (March 24, 1997) (reversing the ALJ's order dismissing the civil proceeding, and remanding the civil case for reinstatement and issuance of a stay pending the completion of this proceeding). The Double Jeopardy Clause prohibits subjecting a person to jeopardy of life or limb twice for the same offence. *See S.A. Healy Co. v. Occupational and Health Review Commission,* 96 F.3d 906, 908 (7th Cir.1996). The threshold question in double jeopardy cases is whether jeopardy in fact attached to the defendant. *See Serfass v. United States,* 420 U.S. 377, 390–91, 95 S.Ct. 1055, 1063–64, 43 L.Ed.2d 265 (1975). "[J]eopardy does not attach until a defendant is 'put to trial before the trier of the facts, whether the trier be a jury or a judge.'" *Id.* at 391, 95 S.Ct. at 1064; *see also United States v. Torres,* 28 F.3d 1463, 1464 (7th Cir.), *cert. denied,* 513 U.S. 1059, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994) (stating that in civil cases jeopardy attaches "when evidence is first presented to the trier of fact in a proceeding seeking to impose a penalty for crime."). In support of their double jeopardy claim, defendant argues that the civil case, which the ALJ judge dismissed, on April 28, 1995, with prejudice and on the merits, constituted "jeopardy" for purposes of the Fifth Amendment. Since the OSHRC reversed this decision, however, defendant's reliance on it for double jeopardy purposes is no longer justified, the issue is mooted, and the court need not address whether the prior civil decision would have constituted jeopardy for Fifth Amendment purposes.

Additionally, defendant argues that the ALJ's order in the civil case precluded the current criminal proceeding. However, this issue is also moot. Res judicata (claim preclusion) only exists if, among other things, there was a final judgment on the merits in an earlier action involving the same cause of action. *Brzostowski v. Laidlaw Waste Systems, Inc.,* 49 F.3d 337, 338 (7th Cir.1995) (citation omitted). Defendant again relies upon the civil proceeding, which resulted in a dismissal on the merits, to satisfy this finality requirement. However, as above, since that decision has since been reversed, thereby reinstating the civil proceeding and the stay, it is no longer final and this issue is moot.

### Conclusion

For the reasons set forth above, the court denies defendant's motions to dismiss the indictment.